HATTIE A. STEVENS and another, in equity,

*vs.*

JONATHAN MOORE and others.

Somerset.    Opinion June 1, 1882.

*Equity.    Pleading.*

A general allegation of fraud is not sufficient in a bill in equity praying for relief, the acts constituting the fraud must be set out.

Where the bill alleges that the defendant made fraudulent representations, which are relied upon as constituting the fraud, it should also allege, that the representations were false and made with the knowledge of their want of truth, or made by the party as of his own knowledge when he had no knowledge.

ON REPORT.

Bill in equity.    Heard on bill, demurrer, answer and proof.

The following are the material parts of the bill :

"Humbly complaining,   .   .   .   Hattie A. Stevens,   .   .   . that on the fifteenth day of June, in the year of our Lord, one thousand eight hundred and seventy-eight, she, by the name of Hattie A. Collins, and the said Joseph Stevens made a contract of marriage to be thereafter consummated between them and in consideration thereof the said Joseph Stevens at said Solon then conveyed to your oratrix by the name of Hattie A. Collins, the building in said Solon occupied by said Joseph Stevens as a tailor's shop and dwelling house, and the land on which the same stood and connected therewith, but named in the deed affection for her and certain services to be performed, that thereafterwards in consideration thereof said marriage was consummated between your orators on the third day of the July then next following and continues to exist until the present time.

"That on the ninth day of December in the year of our Lord one thousand eight hundred and seventy-eight, Jonathan Moore of said Solon, fraudulently and wickedly intending and contriving to injure, cheat and defraud your oratrix, the said Hattie A. Stevens of said premises, and deprive her of all benefit and use

thereof, and to have, appropriate and convert the same to his own use and benefit, asked her to let him see the deed aforesaid from her said husband to her, and after examining it, told her that the deed was not good and valid, that under it she could not hold the premises; that her husband was owing large sums, that his creditors could take the premises for his debts and advised her to put them into some person's hands to save for her; that she should do it at once, for the officers would be after it immediately; that he would take part of it and hold it for her if she would find some one else to take the balance, that it would not answer for him to take the whole. That being a woman unacquainted with business and entirely unskilled in legal proceedings, and believing that said Moore, who was their family physician, was acting a friendly part and representing things truly as they were, she became alarmed and greatly feared lest she should lose the premises conveyed to her in consideration of her marriage, and which she expected and trusted to keep as a residence for herself and family, and be turned out upon the world without a home, and so she was induced to act in accordance with the wicked, treacherous and fraudulent representations and proposals of said Jonathan Moore, and selected her mother, Mrs. Mary Collins, to take a conveyance of such portion of the premises as the said Jonathan Moore did not take.

"That thereupon the said Jonathan Moore in furtherance of his aforesaid wicked, corrupt and fraudulent design, procured a scrivener in said Solon to make two notes, running to Ann E. Moore, of said Solon, wife of said Jonathan, of that date, one for two hundred dollars, payable in one year with interest at six per cent. and one for one hundred and seventy-two dollars payable in two years, with interest at six per cent. to be signed by your oratrix, Hattie A. Stevens, and a mortgage of the whole premises to said Ann E. Moore, conditioned to secure the payment of said notes, and also a deed of the whole premises to the said Mary Collins, with covenants against all incumbrances except said mortgage to Ann E. Moore; that influenced by the aforesaid wicked, deceitful, corrupt and fraudulent representations of the said Jonathan Moore she signed the said two notes and executed

the said mortgage to Ann E. Moore, and the deed to her mother, Mary Collins, and caused both said deeds to be executed by her said husband, Joseph Stevens, and both deeds were duly recorded the next day, December 10, 1878.

"Your orators further say that said mortgage and two notes to Ann E. Moore and deed to Mary Collins were without any consideration whatever, either of benefit to your orators or either of them, or of loss, injury or inconvenience to said Jonathan Moore, Ann E. Moore and Mary Collins, or either of them; that no settlement was made by your orators or either of them with the respondents or either of them, and no receipts were passed; that said notes and deeds were made solely for the purposes herein above named. . . .

"Your orators further say that the said Ann E. Moore well knew and perfectly understood, that said two notes and mortgage deed, made and executed to her, were entirely without any consideration, moving from her and her husband Jonathan Moore or either of them, and were obtained entirely through the fraud of her said husband. Yet agreeing, contriving, conspiring and confederating with her said husband to defraud your oratrix, and put the same in use for the benefit and use of her said husband, on the third day of January, A. D. 1880, at said Solon she did assign in due form the said mortgage deed together with both said notes to Lucius L. Morrison of Skowhegan, in said county, in payment and discharge of a judgment that said Morrison then held against her said husband, Jonathan Moore.

"Your orators further say that at the time and long before he took said assignment of said mortgage of January 3, 1880, from said Ann E. Moore to him, said Morrison, well knew and perfectly understood that said notes and mortgage were entirely without consideration, that they were obtained by the fraud of said Jonathan Moore, and well knowing all this he combined and confederated with the said Jonathan Moore and Ann E. Moore to put the same in use in consummation of said fraud, and took said assignment in payment of said judgment he held against said Jonathan Moore, in pursuance of said confederation.

"Your orators further say that said Morrison, on the twenty-fourth day of March, A. D. 1880, published a notice in the Somerset Reporter of that date, by which he intended to institute and commence proceedings to foreclose said mortgage, which notice, although fatally defective for the purpose of its design, shows a determination to make said mortgage available to him, and to deprive your oratrix of her said property so mortgaged."

*John H. Webster*, for the plaintiffs.

If any portion of the bill is good the demurrer must be overruled and judgment on the demurrer to be final. Chancery Rule, 36; *P. S. & P. R. R. Co.* v. *B. & M. R. R. Co.* 65 Maine, 122; *Burns* v. *Hobbs*, 29 Maine, 273; *Laughton* v. *Harden*, 68 Maine, 208.

The consideration of the conveyance under which complainant took the land is the most valuable known to the law, that of marriage. *Prewitt* v. *Wilson*, U. S. S. Court, 1881, Reporter of March 30, 1881.

Jonathan Moore occupied to her the confidential relation of family physician. Standing in that confidential relation equity devolves on him the burden of proof "to establish affirmatively the perfect fairness, adequacy and equity" of his claim. 3 Green. Ev. 253 and 254, and cases cited, physician and patients.

In transactions between parties in confidential relations towards each other even innocent misrepresentations of the law will be fatal. Bigelow on Fraud, 10, 14, 247 266, 267; *Bellage* v. *Southee*, 3 Hare, 534; *Dent* v. *Bennett*, 4 Mylne and C. 269; *Clarke* v. *Robinson*, 58 Maine, 133; *Clark* v. *Malpas*, 31 Beav. 80; *Sharp* v. *Leach*, 31 Beav. 491; *Fisher* v. *Budlong*, 10 R. I. 525; *Brice* v. *Brice*, 5 Barb. 533; *Sears* v. *Shafer*, 1 Barb. 408; S. C. 2 Seld. 268; *Whelan* v. *Whelan*, 3 Cow. 537; *Kuelkamp* v. *Hidding*, 31 Wis. 503.

The fraud practised by Moore on Mrs. Stevens is sufficient to authorize a court in equity to set aside the notes and mortgage were the transactions between strangers. *Pratt* v. *Philbrook*, 33 Maine, 17; *Clark* v. *Robinson, supra*; Bigelow on Frauds, 14; *Kuelkamp* v. *Hidding, supra*; *Bean* v. *Herrick*, 12 Maine, 262.

*D. D. Stewart,* for the defendant.

DANFORTH, J.  To this bill a demurrer has been filed, as well as answers, upon which evidence has been taken upon both sides. The bill seeks a remedy for damage resulting from an alleged fraud.

Under the demurrer several defects are apparent, some of which may be amendable, but others are clearly fatal.  It appears from the bill that the wrong purpose to be accomplished is to deprive the female plaintiff of certain specified real estate, while the act accomplished and from which relief is asked is the obtaining two promissory notes secured by a mortgage of the real estate described.

The more important defects, however, are found in the substance of the bill, in its failure to set out any case of which the court can take cognizance.

It must now be considered as well settled that a general charge in a case where fraud is relied upon is insufficient.  Here the evidence to be introduced, or the minute facts which are important only as they bear upon others which are relied upon, need not be recited; but those which constitute the fraud and enough to to show that a fraud was committed or attempted must be alleged. Story's Eq. Plead. § 251.

In this case there is an entire failure in this respect.  There are indeed certain definite representations set out which are alleged to be fraudulent.  But it is evident that of themselves they are not fraudulent.  If true they are not so.  If honestly made believing them true, they are not.  They are only fraudulent when false and made with a knowledge of their want of truth, or made by the party as of his own knowledge when he has no knowledge as to their truth or otherwise.  *Pratt* v. *Philbrook,* 33 Maine, 17 ; *Clark* v. *Robinson,* 58 *Id.* 133.  In this bill we find no allegations of these necessary constituents of fraud.  For aught that appears the representations may be literally true, and if so, there can be no fraud in making them so far as regards this plaintiff.

Some reliance seems to be placed upon the allegation that the consideration in the deed represented to be void as against the

grantor's creditors, was a marriage with the grantee. This would undoubtedly be a valuable and sufficient consideration as to creditors. But this alone would not necessarily make the deed valid as to them. Much less is it a sufficient allegation of the dishonesty or knowledge of the want of truth in the representation of its invalidity. The substance of the representation is that the grantor was in debt and notwithstanding the deed, the property would be liable to be levied upon by his creditors. There is no allegation that the grantor was not in debt and it is not alleged that the conveyance was not made to keep the property from the creditors.

But even both these allegations would fail to show any dishonesty or fraud on the part of the defendant in the representations set out. It will be noticed that although the consideration alleged is sufficient, it also appears from the bill that such consideration was not named in the deed, but the only one there expressed is, "affection and services to be performed." What these services to be performed were, does not appear, nor is it necessary now to inquire whether such a consideration is so inconsistent with that of marriage as to prevent the latter being shown by parol evidence as an additional consideration so as to keep the property from creditors. It is enough for present purposes that so far as appears, the defendant had no other knowledge than that gained from an inspection of the deed, though the circumstances were such that he might well have expected it, if there had been any facts inconsistent with, or in addition to what there appeared. If then the statement that the property was still liable to attachment was not true, from the knowledge obtained by the defendant from the deed, and the absence of information from the party, he would seem to be justified in the statement made. There would seem to be then, no allegations in the bill, independent of the usual, formal and general statement of fraud, inconsistent with the entire honesty of the defendant, who is charged with having made them.

Thus much for the issue formed by the demurrer, from which it clearly appears that the process cannot be maintained under the allegations in this bill.

From the evidence in the case the plaintiff stands no better. That overwhelmingly shows that at the time of the conveyance, the grantor was deeply in debt and probably insolvent, and by a preponderance that the notes and mortgage were obtained under a claim of a balance of account due the defendant and as security therefor. Whether for a larger amount than was justly due appears more doubtful. But of that we have no occasion to inquire, as the bill puts the claim for relief upon another and entirely different ground, and the question as to the amount due is open upon a bill for redemption.

> *Demurrer sustained.*
> *Bill dismissed.*

APPLETON, C. J., WALTON, BARROWS and PETERS, JJ., concurred.