JOHN O'CONNOR, Appellee, v. ILLINOIS CENTRAL RAILWAY COMPANY, Appellant.

1. **Master and Servant**: DEFECTIVE MACHINERY: KNOWLEDGE OF EMPLOYER: NEGLIGENCE: PLEADING. In an action by an employe of a railroad company for damages for injuries sustained in being thrown from a freight car alleged to be so defectively constructed that it would not turn a curve, an allegation that the plaintiff's injury

was caused wholly by the defendant's negligently using and permitting to be used the car so defectively constructed sufficiently charges negligence on the part of the defendant, although such negligence could only be proven by showing that the defendant had either actual or constructive knowledge of the defect.

2. ————: ————: NEGLIGENCE: EVIDENCE. The only evidence that the car complained of by the plaintiff was defective was, that while the same was being moved by pushing the car ahead of an engine over the defendant's track it was derailed on a curve. On the other hand it appeared that the car was carefully examined by the defendant's car inspector the day before the accident, and by the car inspector and the foreman of the engine house the day after the accident, and found each time to be in perfect order. It further appeared that the truck used with the car in question was in general use in six states, and is used by many of the leading railroads of the country acceptably. *Held*, that a verdict for the plaintiff was not supported by the evidence.

*Appeal from Woodbury District Court.*—Hon. G. W. Wakefield, Judge.

Friday, May 29, 1891.

This is an action to recover damages for a personal injury. There was a judgment for plaintiff, and the defendant appeals.—*Reversed.*

*J. F. Duncombe*, for appellant.

*J. N. Weaver*, for appellee.

Granger, J.—In January, 1889, the plaintiff was in the employ of the defendant company engaged in switching cars to and from the Union stock yards and the pork and beef packing houses in and about the city. On the fourteenth day of that month the defendant company was moving a Chicago refrigerator car by pushing the same ahead of an engine from the transfer track of the company over the Union stock-yards track to the Silberhorn packing house, when the car was derailed on a curve of the track, and

1. MASTER and servant: defective machinery: knowledge of employer: negligence: pleading.

the plaintiff, being on the car, was thrown therefrom, and injured. The allegations of the petition showing the negligence of the defendant are as follows:

"That said refrigerator car on which plaintiff was so riding was so defectively constructed in its trucks and running gear that it would not turn a curve on the defendant's said railroad tracks, and when at or about the point above mentioned, and being so removed, said car, on account of said defective construction, jumped the track, and became derailed, whereby plaintiff was thrown from the top of said car to the ground with great force and violence, inflicting upon plaintiff serious and permanent injuries," etc. "That said injury to plaintiff was caused wholly by the defendant's negligently using and permitting to be used said car so defectively constructed, and through no fault of plaintiff, by reason of all which plaintiff has been damaged to the sum of five thousand dollars, no part of which has been paid."

After verdict, the defendant moved in arrest of judgment as follows:

"*First.* As grounds in arrest of judgment the defendant says that the petition in this case is defective and does not show a cause of action, in that it does not state that the defect in the construction of the running gear and trucks of the car from which the plaintiff is alleged to have fallen was known to the defendant, or might have been known to the defendant by the exercise of ordinary care. *Second.* The petition does not allege that the defendant had knowledge or notice of the negligence complained of, either actual or constructive."

A motion in arrest of judgment is available only when "the facts stated by the petition do not entitle the plaintiff to any relief whatever." Code, sec. 2650. A correct test of the sufficiency of the petition to entitle the plaintiff to any relief is to admit the facts

pleaded, and to determine the law applicable thereto:
Applying the test to this case, we have these facts:
The refrigerator car was so defective in its running
gear that it would not turn a curve on the defendant's
road; that on account of such defective construction it
became derailed, and the plaintiff, without fault on his
part, was thereby injured; and that the injury was
caused by the company negligently using or permitting
to be used the car so defectively constructed. The
averments are to this effect: That the defendant, by
negligently using a defective car, injured the plaintiff
without his fault. Under the law, a party is liable for
injuries resulting from his negligence to which the
other party does not contribute. The plaintiff has
in general terms averred negligence in the use of
the car. Such negligence could only be proven by
showing the knowledge, "actual or constructive,"
which the appellant claims should be alleged. The
allegation claimed would only make the petition more
specific. If stated in the petition, nothing more than
negligence would be pleaded. The facts there stated
as grounds for the motion go rather to the form or
manner of pleading negligence than to its substance
or the ultimate fact, and a motion in arrest is not
available in such cases. *District Township of Coon v.
Directors District Township of Providence*, 52 Iowa, 287;
*Edgerly v. Insurance Co.*, 43 Iowa, 587.

II. It is next urged that the verdict is without
support in the evidence. The car in question is one of
a series of sixty-three in number, manu-
factured by the LaFayette car works for
the Chicago Refrigerator Car Company in
October, November and December, 1888, and is num-
bered 11057. It was delivered to the defendant
company in December, 1888, and by that company
taken to Sioux City, Iowa, and went over the track
and around the curve where it was afterwards derailed,

2. ——: ——: negligence: evidence.

loaded at the packing-house, and back over the track
to the company's line, and thence to Chicago, and was
again taken to Sioux City on the eleventh of January,
1889.  On the thirteenth of January—the day before
the accident—the car was examined by the car
inspector for the company, and the car found to be in
perfect order.  Mr. Swift, the car inspector, says:

"I looked it all over carefully and particularly.  I
examined the trucks and running gear.  I looked at
the wheels, and looked at the truck, and all over it, to
see that the bolts were all right, and the drawheads,
everything that was in view.  *  *  *  The next
morning I saw it,—the fifteenth.  She was sitting
on the sidetrack there, by the engine-house, in the
yard.  It was brought back to the yard.  I looked
it over, and found the side bearing gone on the
bolster.  I jacked it up, so I could see the center
plates.  Raised the car up off the track, so I could see
the center pin.  I did it to see if there was anything
wrong with the center pin,—whether there was any-
thing in there,—and I always do; and another thing
was to get my side bearing on,—to get my bolts in.  I
carefully examined these center plates, and the various
parts of these trucks, and put my hand in to see if there
was any dirt or stones or pieces of iron.  These center
plates were in plain view after the car was jacked up,
and I looked at them.  There was nothing the least the
matter of them.  I examined both trucks and center
plates.  I didn't jack up the other end because it
worked all right.  The one end that was skewed around
was the one that I examined, where the little piece of
iron was off the car.  Nothing wrong with the truck.
Nothing wrong with the running gear, except the loss
of this little piece.  I tried the wheels.  Gauged the
wheels.  They were all in perfect order.  The gauge is
a stick that we have to try wheels with, the same gauge
that is used on the tracks.  The car had never been

there before for repairs. I examined it before. I
should judge about a month before. I found it in per-
fect order, as far as I could see. I made a perfect
examination of it at that time. There was nothing the
matter of the running gear or trucks that I could dis-
cover.

Cross-examination: I am the car-repairer. I have
never had any other experience with any other of
these refrigerator cars in Sioux City only in the draw-
bar line, or something of that sort. *Q.* Didn't you
receive orders to send some of them to Waterloo on
account of their not keeping track? *A.* That was
afterwards. I examined the car in the yard, and it
was in perfect good condition, as far as I could see. I
considered it in first-class. It was in perfect good con-
dition the day before this accident, and it was in perfect
good condition the day afterwards. I replaced a
side casting. That was all that was wrong about that
car, as far as I could see; that was all there was wrong.
I jacked this car up in the yard after the accident.
Didn't before the accident. I had no occasion to."

Mr. Bryant, foreman of the engine-house, also
examined the car with Mr. Swift after the accident,
and testifies that there was not anything to indicate
that it was not in perfect condition. The trucks used
with this car are in general use in Illinois, Wisconsin,
Iowa, Minnesota, Nebraska and Missouri, and are
used by many of the leading railways of the country
acceptably. The record is in fact an affirmative show-
ing in favor of that make of cars. It is a significant
fact in this case, and of quite controlling importance,
that no particular defect has ever been found in the car
in question. In this respect this case differs from the
generality of this class of cases before us. Generally
the defect or cause of the accident is known at the time
of the trial,—as a defective coupling or hand-piece, a
broken axle or wheel, some particular fact to which the

accident can be attributed, and the fact of negligence in regard thereto determined. Barring the fact that the car did mount the track at this particular point on the day of the accident, and the day following, and all the evidence shows the car to have been in good condition, without defect; and, further, that the company had been diligent to know its condition. Take from the record the fact of the derailments, and nothing would be left to cast a suspicion against the actual condition of the car or the conduct of the company to know its condition. If the accident had disclosed a defect in the car, that fact might have tended to show that the inspector came short of his duty. But the subsequent inspection substantiates the former, and the car, after the accident, so far as an inspection could show, was then in good condition. Hence, the simple fact of derailment stands as the only evidence of negligence. If that simple fact could, in law, be sufficient to show negligence, it is conclusively overborne by an affirmative showing that the car in the particular as to which it is alleged to be defective was not so, at least, in a manner that it was ascertainable; and there could be no claim that more was required of defendant than diligence to know if the car was serviceable. That the mere happening of the derailment or the accident would not show negligence, see *Baldwin v. Railway Co.*, 68 Iowa, 37; *Case v. Railway Co.*, 64 Iowa, 762; *Gandy v. Railway Co.*, 30 Iowa, 420. In fact this rule is conceded by the appellee. The nearest that the appellee comes to an attempt to point out evidence from which a defective truck or running gear could be found is that Swift, the car inspector, made report to Bryant, the foreman of the engine-house, who made a report to the master mechanic, as to this car after the accident. Orders were afterwards received from the master mechanic to "try the gauge" on the refrigerator company's cars, and it was found that some of them varied about a fourth of an inch, and they were marked

and sent to Waterloo, but returned without change. But the car in question was not one of them; and the evidence shows without dispute that the gauge of this car was tried and found correct before and after the accident. The appellee assumes that because of this order to try the gauge of that class of cars there must have been a difference between the report made to the master mechanic and the testimony of Swift and Bryant on the stand, but the assumption is without support, and will not do as a fact on which to base negligence. It is also said that other cars passed over this same track without derailment, which is true. It is also true that this car on two occasions mounted the track at this particular place, while it was operated both before and after the accident, on curves and other places, without mishap. The most that can be said for the appellee is that this car, at this particular place, from some unknown cause, became derailed, and caused the injury to the plaintiff. But that is not what the appellee needs. He needs some known facts, having support in the evidence, from which negligence may be found. We think the verdict is without support in the evidence.

Other questions presented it is not important to consider, and the judgment is REVERSED.