Argued 8 Oct.; decided 12 Nov., 1900; rehearing denied 4 Feb., 1901.

## CEDERSON v. OREGON NAVIGATION CO.

[62 Pac. 637; 63 Pac. 763.]

PLEADING — COMPLAINT AND REPLY — DEPARTURE.

1. Where the complaint, in an action for causing the death of a person, alleged that he was rightfully at the place of the accident by reason of the ownership of the *locus in quo* by his employers, and defendant railroad company answered that the *locus in quo* was its right of way, a reply that decedent's employers and their servants had been licensed and invited by defendant to pass over the place where the accident occurred was not objectionable as a departure from the complaint.

PLEADING — RULE FOR CONSTRUING COMPLAINTS.

2. Where a complaint is objected to on a question of evidence, all intendments are in its favor, while a contrary rule prevails in case of a demurrer before trial.

RULE IN PLEADING NEGLIGENCE.

3. In pleading negligence it is always necessary to allege that some act was negligently done or omitted, but it is not necessary to set forth the particular facts that show the act or omission to have been negligent: *Woodward* v. *Or. Ry. & Nav. Co.*, 18 Or. 289, and *McPherson* v. *Pacific Bridge Co.*, 20 Or. 486, distinguished; *Wild* v. *Or. Short Line Ry. Co.*, 21 Or. 159, approved.

NEGLIGENCE — PLEADING KNOWLEDGE OF DEFENDANT.

4. In an action by a stranger to recover damages for injuries caused by negligence it is not necessary to plead defendant's knowledge or negligent ignorance of the cause of the injury, whatever may be the rule in cases against municipalities or by servants against masters.

MOTION TO MAKE COMPLAINT MORE DEFINITE.

5. Where it appears that the particulars of an event in litigation must be within defendant's knowledge, and plaintiff has stated a cause of action, and alleges that he has set forth all that he knows, a motion to make the complaint more definite and certain should be overruled.

DUTY OF RAILROAD TO TRESPASSER OR LICENSEE ON ITS TRACK.

6. Railroads are not under obligation to watch for trespassers on their tracks at unusual places, nor do they owe any duty of active care to persons who are merely permitted to pass over or upon the right of way; but they do owe such a duty to those who may have been led by the express or implied consent of the defendant to use the premises as a passage way. The difference is between a trespasser or a bare licensee, and a licensee by tacit consent or passive acquiescence.

RAILROADS — DUTY TO LICENSEE BY PERMISSION — NONSUIT.

7. Plaintiff's decedent was killed by the derailment of defendant's train while he was walking on a wagon road constructed by his employers on defendant's right of way, between the track and a rocky bluff, in which a cut had been made when the road was built. The wagon road had been made by widening the cut while defendant and its predecessor in interest were operating the railroad. At the point of the accident, which was near a junction of a siding used by defendant, the wagon road had been in frequent and constant use by decedent's employers for their men and teams for about ten years, and it was also used more or less by the public. *Held*, that the evidence was sufficient to go to the jury on the question whether decedent was a licensee by invitation, to whom defendant owed the duty of active vigilance to avoid injury while he was using the wagon road for the purpose for which it was built.

NEGLIGENT INSPECTION OF CARS — QUESTION FOR JURY.

8. In this case deceased was killed by a train of defendant's cars that jumped the track owing to the breaking of a defective wheel flange. *Held*, that the testimony was sufficient to take the case to the jury on the question whether the car had been inspected with reasonable care and skill.

PRESUMPTION OF NEGLIGENCE FROM THE HAPPENING OF AN ACCIDENT.

9. An instruction, in an action against a railroad company for causing the death of a licensee, that negligence cannot be presumed from the mere happening of the accident, yet that it may be from the circumstances of the transaction, if they are such as to cause the jury to believe that the accident would not have happened if reasonable care had been used, is not misleading when followed by an instruction that plaintiff must prove, by positive and affirmative evidence, the want of due care on defendant's part, and that the injury complained of was the direct result of the want of such care.

DUTY OF RAILROAD COMPANIES TO INSPECT CARS.

10. It is the duty of a railroad company to inspect its cars and test them at reasonable periods to ascertain their condition, and where it does make such inspection and finds the cars apparently safe, it cannot be held liable for defects which could not have been discovered by ordinary inspection.

DEPARTURE IN PLEADING.

11.   The question of departure between the complaint and reply is re-examined, and the law as set forth in the original opinion is affirmed.

EVIDENCE OF OWNERSHIP — DEEDS.

12.   In an action against a railroad company for the negligent killing of a person near its tracks, conveyances tending to show the ownership of the *locus in quo* in decedent's employers were proper to go to the jury as color of title on an issue of adverse possession, if for no other reason.

NECESSITY OF PLEADING AN ESTOPPEL.

13.   An estoppel must always be pleaded if the case permits it; and after a trial a party will not be heard to insist that certain evidence showed an estoppel, when no estoppel was pleaded.

PRIVATE RIGHT ON RAILROAD RIGHT OF WAY.

14.   The fact that a railroad has a right of way across certain premises does not necessarily give it the exclusive right on such ground; others may have rights thereon that the road must respect.

From Wasco: W. L. BRADSHAW, Judge.

Action by N. O. Cederson, as administrator of the estate of William Cederson, deceased, against the Oregon Railroad & Navigation Company for the recovery of damages for the killing of one William Cederson through the alleged negligent acts of the defendant company in operating its railroad. The complaint states, among other things, "that on the fourth day of November, 1896, and for a long time prior thereto, the defendant was engaged in the operation of a railway from Portland, Oregon, to Huntington, in the same state; that said road runs through certain property belonging to the Seufert Bros. Company, a few miles above Dalles City, in said state; that on the said fourth day of November, 1896, the said deceased was in the employ of said Seufert Bros. Company, and that on said day, while passing over the premises of the said Seufert Bros. Company, from the eating-house of said company, where he took his meals, to the place where he slept, and while rightfully and lawfully going across the premises of said Seufert Bros. Company, from one

place to the other, as he had a right to do, the said defendant was running one of its trains along its said road in close proximity to where the said plaintiff's decedent was walking; that in running and operating said train along said road the said defendant and its employees negligently and carelessly operated over said road a truck and car which were too wide for said track, and the wheels of which car, and the flanges thereon, were cracked, broken, and unsafe, and so negligently and carelessly operated said train, and the engine and cars attached thereto, that by reason of said negligent and careless operation, and by reason of said truck and car being too wide and out of gauge with said track, and by reason of the bad, broken, and cracked condition of the wheels of said car, and by reason of all of said things combined, said car, and other cars attached to the same, jumped the track, while passing along said road, at a point opposite or nearly opposite where plaintiff's decedent was walking, as hereinbefore alleged, and ran and was thrown upon and against plaintiff's said decedent, causing him great bodily injury and death."

The defendant moved the court to require the plaintiff to make the following clause of the complaint, namely, "and so negligently and carelessly operated said train, and the engine and cars attached thereto, that by reason of said negligent and careless operation," more definite and certain, by stating the acts and things constituting the negligent and careless operation of the said train or engine or cars attached thereto. The plaintiff, in resisting the motion, filed an affidavit wherein he averred that he stated in his complaint the facts in relation to the negligence of the railroad company as fully as he was able; that he believed, from the circumstances of the wreck, there was negligence on the part of the defendant in operating said train over and beyond which he is able to point out specifically; that the information relating to the particular details thereof was entirely within the breasts of the defendant's employees, and as to what the particular acts

of negligence were he was unable to state. The motion was overruled, and constitutes one of the assignments of error.

The defendant answered, and denied that its railway runs through the property of Seufert Bros. Company, and other allegations of the complaint, and set up two separate defenses. The first is, in effect, that defendant was at the time of the accident engaged in the operation of a railway, and that it, and its grantors and predecessors in interest, had been for more than twenty years, and was then, the owner, and in adverse and exclusive possession, of the right of way upon which said railway was constructed and operated; that in the usual course of its business it received from other connecting lines certain freight cars for transmission, and that at the time designated in the complaint one of these cars became derailed, without fault or omission of the defendant, an by reason thereof was thrown from the track upon the deceased, who was upon the said right of way, whereby he was killed; that said car was not the property of the defendant, but that it had been repeatedly and carefully inspected by the connecting lines and by the defendant, and found at all times to be in safe and good condition, and that at the time it was not loaded beyond its capacity, or being run at an unusual rate of speed. By the second, it is alleged that at the time of the accident the decedent was on the lands and right of way of the defendant, and in close proximity to the railway line at a point thereon where a cut had been made by the defendant and grantors in the side of a rocky bluff, and between said bluff and the railway; that he was not a passenger nor in the employ of the defendant, and well knew the danger of his position by reason of the operation of the train of cars upon said track; that he knew said train was approaching, and thereby assumed all risk of injury to himself; and that the injury complained of was the result of his own negligence and carelessness.

The reply put in issue the ownership of the alleged right of way, and many other allegations of the answer, and set up three separate defenses thereto: (1) That the Seufert Bros. Company, its predecessors and grantors, had been for more than twenty years, and was then, in the adverse possession of the *locus in quo,* under claim of right, continuously, exclusively, and without objection by the defendant, as a road and highway, from one portion of its premises to another, and that decedent was in its employ, and was passing over said highway in the usual course of his employment, when injured; (2) that the said Seufert Bros. Company, its predecessors, and grantors, for a long time prior to the accident, went upon the immediate premises, under claim of right, and built upon and across the same a highway and road, from one portion of its premises to another, by blasting out a high bluff at great expense; that the defendant had knowledge of the making of said improvement, and acquiesced therein, by reason whereof it is estopped from questioning the right of said Seufert Bros. Company and its employees to pass over the same; that there was no other way of getting from the lower to the upper portion of its premises; and that the decedent was passing upon said highway while in its employ; (3) that for a long time prior to the accident said Seufert Bros. Company and the defendant had allowed, permitted, invited, and licensed the general public, and especially persons who were in the employ of said Seufert Bros. Company, to pass over and along the place where the said decedent was killed, and that he was passing over said premises at the time in pursuance of said license, acquiescence, and invitation, and was rightfully thereon.

There was a verdict and judgment for plaintiff, from which defendant appeals.        AFFIRMED.

For appellant there was a brief over the name of *Cotton, Teal & Minor,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief and an oral argument by *Mr. Alfred S. Bennett.*

MR. JUSTICE WOLVERTON, after making the foregoing statement, delivered the opinion of the court.

1. There was a contention that the reply constituted a departure from the complaint, in that it set up a different title or right to the *locus in quo* from that contained in the complaint, and therefore that it was incompetent to permit the plaintiff, under the allegations of the reply, to establish the decedent's right to be at the immediate place where the accident occurred. The contention is based upon the mistaken idea that the complaint alleged that Seufert Bros. Company was the owner of the *locus in quo*. The allegation is that the road runs through its property, and that, while rightfully passing from said property, the decedent was injured and killed. Such allegation is not inconsistent with the defendant's ownership of a right of way for its road, and was, no doubt, employed as descriptive of the place rather than as a declaration of title and ownership. The defendant having answered that plaintiff's decedent was upon defendant's right of way, it was important to show by what right he was there. This was evidently the purpose of the reply, and in all that was material it was responsive to the answer, and in no respect a departure from the complaint. True, there was much testimony produced to show the ownership of the *locus in quo,* but it was permissible for the purpose of showing that it was upon the property of Seufert Bros. Company, the employers of the decedent.

2. Three other questions are presented, which arise under the pleadings. These are brought upon the record by the motion to make the complaint more definite and certain, and by objections to the introduction of testimony at the trial. It may be premised that, where the sufficiency of the complaint is drawn in question upon the admission of evidence,

all intendments come to its support, whereas, if tested by a demurrer, it must be construed most strongly against the pleader.

3.   It is first urged that the complaint is fatally defective, in that it fails to state the particular acts and omissions constituting the negligence which conduced to the injury complained of.   The general, and we have no doubt the prevailing, rule upon the subject is that "a declaration specifying the act the commission or omission of which caused the injury, and averring generally that it was negligently and carelessly done or omitted, will suffice."   The language quoted is from 14 Enc. Pl. & Prac. p. 334, and the proposition is abundantly supported by the authorities. "Negligence" is treated as a qualifying term, indicating the manner in which an act is done, and not as a mere conclusion of law: Maxwell, Code Pl. 251.   It has been quite generally held that the question of negligence in a particular case is one of mingled law and fact, and that, in denoting or styling an act as careless or negligent, we signify, according to common understanding, not simply a conclusion of law, but state as well an ultimate fact, inferable from certain other facts not stated.   "Therefore," says Mr. Justice MITCHELL, in *Clark v. Chicago, M. & S. Ry. Co.*, 28 Minn. 69 (9 N. W. 75), "it has been generally settled by precedent and authority that a general allegation of negligence or carelessness, as applied to the act of a party, is not a mere conclusion of law, but is a statement of an ultimate fact allowed to be pleaded."   The statement is of an issuable, substantive fact, by reason of the qualifying sense in which the term is applied.   It is not sufficient to plead merely that the plaintiff was injured by the negligence of the defendant, as the term would be applied to no one act of either commission or omission; nor is it good pleading to say that the defendant did an act whereby the plaintiff was injured, as it may have been accidental, or under circumstances which would not render him accountable.   But

when the terms "negligence" or "carelessness" are applied to the act which conduces to the injury, then the act is so qualified that it becomes actionable, and forms a basis for damages.   The distinction is well illustrated in two cases from Indiana.   In *Jeffersonville, etc., R. R. Co.* v. *Dunlap,* 29 Ind. 426, the averment was that the injury was done "by and on account of the gross negligence of said plaintiff," and is was held to be bad pleading.   But in *Ohio, etc., R. R. Co.* v. *Selby,* 47 Ind. 471 (17 Am. Rep. 719), an allegation that "the track of said railway was in bad condition and repair, and the defendant, by its servants and employees, negligently, unskillfully, and carelessly conducted and ran said train," whereby injury resulted, was held to be good, the court saying: "The negligence complained of in the present case related to the condition of the track and the manner in which the train was run and managed.   But in the case in 29 Ind. 426, no act was stated to which the negligence averred to exist could be applied.   When the act complained of is sufficiently stated, it is sufficient to aver that the act was negligently done, without setting out in detail the particulars of the negligence."   When used to qualify the act or omission complained of, the question is whether or not the act is such a one as is alleged, and thus described, and upon this hinges the result.   "It is always necessary," says Mr. Justice COOLEY, in *Lucas* v. *Wattles,* 49 Mich. 380 (13 N. W. 782), "that the plaintiff should count on the negligence he relies upon; but, when he properly avers the negligence, it is not essential that he should set out the facts which go to establish it.   Neither is it usual to do so, nor would it commonly be prudent."   In further support of the proposition, see *Clark* v. *Chicago, M. & S. Ry. Co.,* 28 Minn. 69 (9 N. W. 75); *Johnson* v. *St. Paul, etc., Ry. Co.,* 31 Minn. 283 (17 N. W. 622); *Rolseth* v. *Smith,* 38 Minn. 14 (35 N. W. 565, 8 Am. St. Rep. 637); *Chicago, etc., Ry. Co.* v. *Jennings,* 157 Ill. 274 (41 N. E. 629); *Fitts* v. *Waldeck,* 51 Wis. 567 (8

N. W. 363) ; *Young* v. *Lynch,* 66 Wis. 514 (29 N. W. 224) ; *Louisville & Nashville R. R. Co.* v. *Wolfe,* 80 Ky. 82 ; *Schneider* v. *Missouri Pac. Ry. Co.,* 75 Mo. 295 ; *Mack* v. *St. Louis, etc., Ry. Co.,* 77 Mo. 232 ; *Grinde* v. *Milwaukee & St. Paul R. R. Co.,* 42 Iowa, 376.

It is most stoutly contended, however, that this court has decided otherwise; that is to say, that the specific facts constituting the negligence should be stated. At first blush, one would say there is ground for the contention, but a careful scrutiny of the cases does not bear it out. It is said in *Woodward* v. *Or. Ry. & Nav. Co.,* 18 Or. 289 (22 Pac. 1076) : "It is true, in some jurisdictions it seems to be held sufficient to allege generally that the injury complained of was carelessly and negligently inflicted upon the plaintiff, or that, by reason of the carelessness and negligence of the defendant, the plaintiff was injured; but this mode of statement has never been sanctioned or approved in this state, is at variance with the plain requirements of the Code, and would give defendant no notice of the acts claimed to be negligent, so that he might come prepared to meet them." And in *McPherson* v. *Pacific Bridge Co.,* 20 Or. 486 (26 Pac. 560) : "The plaintiff's counsel claims, in effect, on the argument in this court, that a general allegation of negligence and carelessness was sufficient. But that contention cannot be sustained. Such allegation does not charge a fact." *Knahtla* v. *Or. Short Line Ry. Co.,* 21 Or. 136 (27 Pac. 91), is also cited to the same purpose. It is quite probable that the language quoted was used with reference to the general statement of negligence, without stating an act or omission, with the qualification that it was negligently or carelessly done, which all will admit is insufficient. This is obvious from the *McPherson Case,* wherein it was alleged "that while he (plaintiff) was so engaged in the erection of said tank, through the negligence and carelessness of said defendant, and through the use of defective machinery by de-

fendant,  *  * ·  *   the said timbers employed in the erection of said tank fell upon the plaintiff." After making the remark above attributed to it, and citing the *Woodward Case,* the court further observed, "This leaves nothing upon which a recovery could be predicated but the charge of defective machinery"; thus indicating that the prior remarks of the court were directed to the general charge of negli- · gence. However this may be, the question was not involved in either case, and the only one considered in that relation was whether there had been a variance between the proof and the pleadings. Nor does the *Knahtla Case* support the proposition. The question there was whether the proof was in support of the allegation of the complaint, and the one under consideration here was not involved. But the view of Mr. Justice BEAN, who wrote the opinion, appears to be in harmony with the view elsewhere entertained. He says : "Certainty to a common intent is all that is required, and this is attained in actions for damages resulting from negligence when the neglect of duty relied on and the resultant injury are described with substantial accuracy." *Wild* v. *Or. Short Line Ry. Co.,* 21 Or. 159 (27 Pac. 954), decided within a month of the *Knahtla Case,* holds to the same view. The allegation there was "that while the plaintiff was working upon or about said car, as hereinbefore alleged, the defendant failed to provide, preserve, and secure a safe place for him to work, and negligently and carelessly caused and permitted a locomotive and cars then upon its tracks to run up against the car upon which the plaintiff was working," etc.; and it was held that the gravamen of the complaint was in carelessly and negligently causing and permitting a locomotive and cars to run upon and against the car occupied by the plaintiff, whereby he was injured, which allegation was determined to be amply sufficient to support the action. No different view of the law has since been entertained by this

38 OR.—23.

court, and the *Woodward* and *McPherson Cases* have never
been treated as holding to the doctrine now attributed to
them. See *Lieuallen* v. *Mosgrove,* 33 Or. 282 (54 Pac.
200, 664), and *Jones* v. *City of Portland,* 35 Or. 512 (58
Pac. 657).

4. The next contention is that the complaint is deficient
in not alleging that the defendant had knowledge of the de-
fective condition of the car and truck, or was negligently
ignorant of such defects. Upon this question the authorities
are in apparent conflict, but perhaps not so in reality. In
*Buzzell* v. *Laconia Mfg. Co.,* 48 Me. 113 (77 Am. Dec. 212),
it is held that, in an action for damages for injury to an em-
ployee arising from negligence by the employer in the use
of defective machinery or tools, the declaration is bad if it
does not allege that the defect was known by the defendant,
or that, with proper care and diligence, it might have known.
So, in the case of *Evansville, etc., R. R. Co.* v. *Duel,* 134 Ind.
156 (33 N. E. 355), which was an action for damages by
a servant against his master for injuries received through
the use of defective machinery, it was held that the com-
plaint should show that the defendant had knowledge
of the defects, or by the exercise of reasonable prud-
ence, should have known of them. Cases of this nature
lead Mr. Thompson, in his treatment of the liability of mas-
ter to servant, to observe that "it would seem to follow, as
a rule of pleading, that the plaintiff must allege in his decla-
ration or complaint that the employer had notice or knowl-
edge of the efficient cause of the injury,  *  *  *  or ought,
by the exercise of reasonable diligence, to have known it":
2 Thompson, Neg. 1050, § 47. In further support of the
rule, see *Caruthers* v. *Chicago, R. I. & Pac. Ry. Co.,* 55 Kan.
600 (40 Pac. 915) ; *McMillan* v. *Saratoga, etc., R. R. Co.,*
20 Barb. 449; *O'Keefe* v. *National Paper Co.,* 66 Conn. 38
(33 Atl. 587). Upon analogous principle, this court has
held that, in an action against a municipality for damages

resulting from the bad condition of a street or bridge, it is
necessary to allege notice, or such facts as will impute knowl-
edge to the municipality of the existing condition; other-
wise, the complaint will not support the action:    *Mack* v.
*City of Salem,* 6 Or. 275; *Heilner* v. *Union County,* 7 Or.
83 (33 Am. Rep. 703).    Upon the other hand, there are
many respectable authorities which hold to the doctrine that
it is not necessary to allege knowledge, or facts which im-
pute knowledge, of the defect to the defendant, and that it is
proper and permissible to establish such facts under the gen-
eral allegation that, by the act of negligently using and per-
mitting to be used the defective appliances, the plaintiff was
injured.    Thus, in *O'Connor* v. *Illinois Cent. Ry. Co.,* 83
Iowa, 105 (48 N. W. 1002), the court say:    "The plaintiff
has, in general terms, averred negligence in the use of the car.
Such negligence could only be proven by showing the knowl-
edge, 'actual or constructive,' which the appellant claims
should be alleged.    The allegation claimed would only make
the petition more specific.    If stated in the petition, nothing
more than negligence would be pleaded.    The facts there
stated as grounds for the motion go rather to the form or
manner of pleading negligence than to its substance or the
ultimate fact, and a motion in arrest is not available in such
cases."    So, in *Johnson* v. *Missouri Pac. Ry. Co.,* 96 Mo.
340 (9 Am. St. Rep. 351, 9 S. W. 790), it was held, in an
action by a servant against the master for negligence in fur-
nishing improper appliances for the servant's use, whereby he
was injured, that it was necssary for the petition to charge
that the master either knew, or might have known, of the
dangerous or defective appliance, or it should contain an
equivalent averment, but that an allegation that defendant
negligently furnished the plaintiff an appliance which was
not safe or sound was an equivalent averment, and sufficient.
And in *Knaresborough* v. *Belcher Min. Co.,* 3 Sawy. 446
(Fed. Cas. No. 7,874), which was by a servant against the

master, Mr. Justice HILLYER says : "In cases like the present, knowledge is regarded as an ingredient of negligence, which may be proved under an allegation of negligence." In further support thereof, see *Crane* v. *Missouri Pac. Ry. Co.*, 87 Mo. 588; *Wilson* v. *Denver, etc., R. R. Co.*, 7 Colo. 101 (2 Pac. 1) ; *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. 53).

The authorities are in unison upon the proposition that knowledge of the defect by the defendant must be proven, and it is only upon the question whether the fact of such knowledge should be stated in the complaint that they divide. . The cases holding that such statement is necessary generally hold also that the complaint should show the plaintiff was without knowledge of such defect. There is much force in the suggestion that, if it is necessary that the fact be proven, it should also be alleged in the declaration. All the cases to which our attention has been especially called are actions either against municipalities for negligence in allowing streets or bridges to become out of repair or unsafe or by servants against their masters. The reason for requiring notice or knowledge to be brought home to a municipality under the conditions alluded to, in order to establish liability, is that it is charged with the duty of keeping its highways and bridges in suitable repair for proper use by the public; and if they should become out of repair by use, or be rendered unsafe or insecure by the acts of strangers, that fact should be brought to its notice before it could be required to make the repair or remedy the evil. Hence it follows that it could not be held responsible for a defect concerning which it had no knowledge or could not have been charged with knowledge by the circumstances of the case. But where the municipality, by its own acts or directions, has, through its negligence, rendered its highways unsafe or dangerous, and injury ensues, no proof or notice is required to render it liable, and, of course, none need be alleged: *City of Ft.*

*Wayne* v. *Coombs,* 107 Ind. 75 (57 Am. Rep. 82, 7 N. E. 743) ; *Holmes* v. *Inhabitants of Paris,* 75 Me. 559; *City of Springfield* v. *Le Claire,* 49 Ill. 476.

The principle upon which is based the liability of the master to his servant is quite analogous to that which fixes the responsibility upon a municipality in permitting its streets and highways to become unsafe. A duty is devolved upon the master to provide his servant with a reasonably safe place in which to do the work assigned him, with tools and appliances suitable for the use designed, and he is not liable for injuries resulting from the unsafe condition and defects of such place, tools, or appliances, unless he was cognizant thereof, or ought to have known but for his culpable negligence. Hence the requirement that it must be shown that he had knowledge of their condition, or that such facts must be established from which knowledge may be inferred, or such circumstances shown from which it may be made to appear that he ought to have had such knowledge but for his negligence or carelessness. A railroad company owes no such duty to a stranger, nor does the stranger ordinarily have the means of ascertaining what knowledge the company may possess of defects in appliances conducing to injury; so that the same reason does not exist in his case for requiring the allegation of the company's knowledge of such defects in his complaint. Such knowledge must, however, be shown before a recovery can be had, and the plaintiff must produce proof sufficient, at least, to make a *prima facie* case. There is this further difference, which is significant: In an action by a stranger, the allegation is of an act of negligence to which is ascribed the immediate cause of the injury, while the negligent act of the master conducing to the injury of the servant is usually collateral to the act producing it. The negligent act of providing the servant with unsafe and dangerous appliances is not, of itself, actionable, as no injury necessarily ensues. Some other act must follow to produce

the result, so that the act of negligence is collateral to the act which is the immediate cause of the injury. This brings us back to the proposition first discussed, and which, as we. have seen, constitutes the undoubted rule under the authorities,—that it is sufficient to specify the act the doing of which caused the injury, and state, generally, that it was negligently and carelessly done. Whatever may be the rule as to the collateral fact of negligence in the case of an action by a servant against his master, it can have no application here. Many recoveries have been had upon allegations of like import in similar cases in this state, and we feel quite safe in saying that it is the prevailing practice, and should be respected, at least until sufficient reason appear for the sanction or adoption of a different one.

5. The third assignment is that the court ought to have required the plaintiff to make his complaint more definite and certain by stating the particular acts and things constituting the alleged negligence and carelessness in the operation of said train or the engine and cars attached thereto. By plaintiff's showing, it distinctly appears that he is without definite knowledge sufficient to enable him to set out more particularly the specific acts of negligence contributing to the injury. It cannot be supposed that strangers should be intimately cognizant of the immediate condition of the appliances, and the exact manner of the management and operation of a railroad and its engines and cars. These are matters peculiarly within the specific knowledge of the persons or company having the road in charge, so that the showing is strengthened by the attendant circumstances. Under such conditions, it was not error to deny the motion: *Chicago City Ry. Co.* v. *Jennings,* 157 Ill. 274 (41 N. E. 629) ; *Young* v. *Lynch,* 66 Wis. 514 (29 N. W. 224) ; *Atchison, etc., R. R. Co.* v. *O'Neill,* 49 Kan. 367 (30 Pac. 470) ; *San Antonio, A. & P. Ry. Co.* v. *Adams,* 6 Tex. Civ. App. 102 (24 S. W. 839) ; *Fitts* v. *Waldeck,* 51 Wis. 567 (8 N. W. 363).

6.  It is next insisted that, as no contractual relations existed between the decedent and the defendant, as in the case of a passenger or employee and the like, the defendant owed him no duty of active vigilance, and was not responsible for any injury resulting from the condition of its road, machinery, or appliances, or from the manner in which it conducted its business.  The doctrine is established by the case of *Ward* v. *Southern Pac. Co.,* 25 Or. 433 (60 Am. & Eng. R. R. Cas. 34, 36 Pac. 166, 23 L. R. A. 715), that a railroad company owes no duty of active vigilance to a trespasser upon its track; that is to say, it is not incumbent upon the company to keep an active lookout for strangers upon its track at a point where their presence would not ordinarily be expected, but that, after discovery of their presence, then the duty is devolved upon it to use care and diligence commensurate with the danger, that it may not recklessly and wantonly run them down and injure them simply because they are trespassing upon the right of way. Other courts have applied the doctrine to a mere licensee or person who is simply permitted by the passive consent of a company to be upon the track.  Thus, in *Illinois Cent. R. R. Co.* v. *Hetherington,* 83 Ill. 510, it was pertinently asked: "If, then, the deceased was a wrongdoer on the track of the railroad company, or was in the enjoyment of a bare license or assent, tacitly given, without consideration, is she or her representative in a position to complain of the negligence of the defendant?"  The question received a negative answer.  So, in *Illinois Cent. R. R. Co.* v. *Godfrey,* 71 Ill. 500 (22 Am. Rep. 112), it was said: "At the most, there was here no more than a mere passive acquiescence in this use.  A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident."  In *Sutton* v. *New York Cent. R. R. Co.,* 66 N. Y. 243, an action for damages for an injury sustained as a consequence of a

brakeman's failure, through inattention or some other rea-
son not disclosed, to set the brakes of some cars which had
been set out of the train by a "kick," thereby permitting them
to run slowly backward upon a slight incline, and thus come
in contact with the plaintiff while crossing the track in going
to his work at a foundry, the defendant had permitted work-
men to cross the track at that place habitually, and such was
the nature of the license relied upon by the plaintiff.   Of
these persons the court say : "It owed them no duty to guard
them from accident,—no duty of active vigilance." So it
was held that such license did not operate to restrict the
defendant company in the use of the track and cars or in the
prosecution of its business.

And in *Chenery* v. *Fitchburg R. R. Co.*, 160 Mass. 211 (35
N. E. 554, 22 L. R. A. 575), an action for running down the
plaintiff while on the defendant's track where it was crossed
by a private way, along which plaintiff was traveling, the
court, speaking through Mr. Justice HOLMES, says : "If the
plaintiff was a licensee, and nothing more, her case stands no
better than if she was a trespasser. As against a bare licensee,
a railroad company has a right to run its trains in the usual
way, without special precautions, if the circumstances do not
of themselves give warning of his probable presence, and he
is not seen until it is too late." To the same purpose is *Mc-
Cabe* v. *Chicago, St. Paul, etc., Ry. Co.*, 88 Wis. 531 (60 N.
W. 260). The court say : "The plaintiff was a mere licensee.
The defendant owed him no duty of active care.   The plain-
tiff himself was bound to the exercise of the highest care to
shield himself from injury.   He had no reason to expect that
the defendant would regulate the running of its trains, or
change the course of its business, to suit his purposes or con-
venience.   He could expect from it only such consideration
and ordinary care as it owes to the general public." *Reardon*
v. *Thompson*, 149 Mass. 267 (21 N. E. 369), is illustrative.
The plaintiff was passing over the premises of the defend-

ant in which an excavation had been made, and was injured by falling into it. It was held that, assuming the plaintiff was a bare licensee, yet she went upon the premises at her own risk, and was required to take them as she found them; hence could not recover. To the same effect is *Larmore* v. *Crown Point Iron Co.,* 101 N. Y. 391 (54 Am. Rep. 718, 4 N. E. 752), where it was said: "The precise question is whether a person who goes upon the land of another without invitation, to secure employment from the owner of the land, is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises not obviously dangerous, which he passes in the course of his journey, if he can show that the owner might have ascertained the defect by the exercise of reasonable care"; and it was held he was not. Tacit consent, or passive acquiescence, appears to be the essential, characteristic, elemental feature which distinguishes a mere licensee from a trespasser or stranger. So it seems that a naked license to pass over an estate will not create a duty nor impose an obligation on the part of the owner or person in possession to provide against the danger of accident.

Where, however, the license or privilege is created, not by tacit assent, but by substantial inducement, held out either expressly or by implication by the owner of the premises, then the obligation arises to see that they are in safe condition, and suitable for the use designed, and liability ensues for a breach thereof. Says Mr. Chief Justice BIGELOW, in *Sweeny* v. *Old Colony R. R. Co.,* 10 Allen, 368 (87 Am. Dec. 644): "A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he, directly or by implication, induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

Thus we have illustrated the distinction in the books between a mere naked or bare license and that of the more substantial privilege or license which draws with it the obligation to provide against danger of accident, as well as to see to it that no positive act is done to produce injury. These two conditions run into each other by easy and imperceptible gradations, and it is not infrequently a difficult thing to determine where the one begins and the other ends. Every case is dependent, in a great measure, upon its own attendant and peculiar facts and circumstances. The *Sutton Case,* and others alluded to above, are good illustrations, showing the nature and characteristics of a naked license and the rights of persons entitled to no greater privilege. *Sweeny* v. *Old Colony R. R. Co.* affords an instance of the more substantial privilege or license which entails the obligation upon those granting or suffering it to actively guard the interests of those in the use of it. In that case the person was injured while attempting to cross a private way leading from one street to another. The railroad company had erected a convenient plank crossing, and kept a flagman at the end of it, which crossing had been used by the public several years, and it was decided that the inducement held out by the company created a license to persons so desiring to use it, and the company owed them the duty of active vigilance. In *Murphy* v. *Boston & A. R. R. Co.,* 133 Mass. 121, the injury occurred at a private crossing, extending from one end of a street to its intersection with another, if extended, and affording a means of access to two of defendant's freight houses. It had been planked by the defendant, and used by large numbers of persons, both on foot and with vehicles. The plaintiff was a pupil at a public school, and had occasion to cross the track on the way to school. In determining the controversy, Mr. Justice FIELD, speaking for the court, said : "If there was evidence sufficient for the jury to find that the defendant held out the crossing as a suitable place for

foot passengers to cross, so that the plaintiff may be said to have attempted to cross as he did by the inducement or invitation of the defendant, then the instructions were correct; but, if the plaintiff attempted to cross merely by the license or permission of the defendant, then there must be a new trial." And it was concluded that the case was properly submitted to the jury.

So, in *Swift* v. *Staten Island R. R. Co.,* 123 N. Y. 645 (25 N. E. 378), where the injury was to the plaintiff's daughter, a girl of fifteen years of age, while attempting to cross the defendant's track. At the place of the accident the track ran immediately in the rear of a cluster of houses, at one of which the girl was stopping. The house was separated from the track by a board fence six feet high, through which was a door used by the inmates to pass out, and thence across the track, for the purpose of depositing ashes and garbage in barrels kept on the north side, and to reach a highway, ferry, and store beyond. From near the rear of these houses a board or plank walk had been constructed across the railroad, and, though not a public walk or highway, it had been practically used as such by the people occupying the houses, and by others, for many years, with the knowledge and permission of the railroad company. Upon this state of facts the court reaffirmed the doctrine which had been previously announced, that where the public had for a long time notoriously and constantly been in the habit of crossing a railroad at a point not in a public highway, with the acquiescence of the railroad company, such acquiescence amounts to a license, and imposes a duty upon it, as to all persons crossing, to exercise reasonable care in the running of its trains, so as to protect them from injury; citing, in support thereof, *Barry* v. *New York Cent. R. R. Co.,* 92 N. Y. 289 (44 Am. Rep. 377), and *Byrne* v. *New York Cent. R. R. Co.,* 104 N. Y. 362 (58 Am. Rep. 512, 10 N. E. 539). The former of these cases involved the condition that the plaintiff's intestate

had a right of way across the company's track at the point where he was killed, which had been used by the public for years, and it was determined that such acquiescence amounted to a license and permission by the defendant to all persons to cross at such point, and that, so long as it permitted the use, it was bound to such reasonable precaution as ordinary prudence dictated in the management of its trains to protect wayfarers from injury. In the latter case there was an alley at the place where the plaintiff was injured, which was extensively used by the public without any objection on the part of the defendant, and it was left to the jury to determine in what manner the way was used by the public, and thereby to determine the obligation and responsibility of the railroad company as to whether it had acted with proper precaution and prudence in approaching the crossing. This case approves the doctrine of the *Barry* and distinguishes the *Sutton Case*. The doctrine of the New York and Massachusetts cases under discussion finds ample support elsewhere. It was applied in Iowa in the case of an accident occurring in the City of Des Moines. The employees of a packing-house and others had constructed a stairway down an embankment and a footway of ties across a ditch to the track of defendant, and from thence a footpath continued across the track, which was in daily use by a number of persons. The plaintiff was injured by a moving train while attempting to cross the track, and it was held that he was not a trespasser, but was entitled to all the rights and protection of one rightfully upon the track with the license of the defendant: *Clampit* v. *Chicago, St. Paul & M. Ry. Co.*; 84 Iowa, 71 (50 N. W. 673).

So, in Pennsylvania, where plaintiff attempted to cross the track by a well-beaten path, used by the employees of a furnace and others as a short cut to a station and postoffice, and was injured, it was held that she could not be treated as a trespasser: *Philadelphia, etc., R. R. Co.* v. *Troutman,*

6 Am. & Eng. R. Cas. 117* To the same effect is *Taylor
v. Delaware Canal Co.,* 113 Pa. St. 162 (57 Am. Rep. 446,
8 Atl. 43). And in Texas, where an embankment, thrown
up across a depression and occupied by three tracks of the
company's railroad, had been long used by pedestrians as a
footpath, it was held that such pedestrians could not be
classed as mere trespassers to whom the company owed no
duty whatever, and that greater care was exacted in the
approach of trains than would be required at a place where
there was no cause to apprehend their presence: *Texas &
Pac. Ry. Co.* v. *Watkins* (Tex. Civ. App.), 26 S. W. 760.
To the same purpose, see, also, Patterson, Ry. Acc. Law,
§187; *Illinois Cent. R. R. Co.* v. *Dick,* 15 S. W. 665 (not
officially reported) ; *Townley* v. *Chicago, Mil. & St. P.
Ry. Co.,* 53 Wis. 626 (11 N. W. 55) ; *Whalen* v. *Chicago &
N. W. Ry. Co.,* 75 Wis. 654 (44 N. W. 849) ; *Johnson* v.
*Lake Superior Transfer Co.,* 86 Wis. 64 (56 N. W. 161) ;
*Virginia Midland R. R. Co.* v. *White,* 84 Va. 498 (10 Am.
St. Rep. 874, 5 S. E. 573) ; *Cahill* v. *Chicago, M. & St. P.
Ry. Co.,* 20 C. C. A. 184 (74 Fed. 285) ; *Harriman* v. *Pitts-
burg, etc., Ry. Co.,* 45 Ohio St. 11 (4 Am. St. Rep. 507,
12 N. E. 451) ; *Young* v. *Clark,* 16 Utah, 42 (50 Pac. 832) ;
*Le May* v. *Missouri Pac. Ry. Co.,* 105 Mo. 361 (16 S. W.
1049) ; *Troy* v. *Cape Fear, etc., R. R. Co.,* 99 N. C. 298
(6 Am. St. Rep. 521, 6 S. E. 77) ; *Seymour* v. *Central Ver-
mont R. R. Co.,* 69 Vt. 555 (38 Atl. 236).

7. We come now to the application of the rule to the case
in hand. To this end it will be necessary to take note of the
conditions and circumstances under which the accident oc-
curred, and to allude briefly to some of the testimony. The
decedent was killed at the point of a rocky bluff, in passing
which the general course of the defendant's main line is east

---

* NOTE.—At p. 123 of 6 Am. & Eng. R. R. Cas. is a note collecting
many cases on the obligation of railroad companies to the public at
crossings.—REPORTER.

and west. In constructing the roadbed a cut had been made in the side of the bluff, which was subsequently widened to admit of a wagon road between the track and the bluff. While a train of the defendant's freight cars was going wesv, some of them became derailed, and ran against the decedent, who was upon the opposite side of the wagon road from the track. A few feet east of the place of the accident a side track extends from the main line on the north, and runs easterly by a fish cannery, the property of Seufert Bros. Company. This was in use by the railroad company in shipping fish and other merchandise to and from the cannery. It was also used more or less as a siding for empty cars, which were set out and picked up as occasion demanded. The cannery is situated some 300 feet easterly from the place of the accident, and on the opposite side of the track is a mess house, belonging also to Seufert Bros. Company, used by the employees in said cannery and by men engaged in fishing. The wagon road runs between the mess house and the railroad, and at that point is some fifteen or twenty yards from the track, and upon a higher level. It continues thus west, until it reaches a point nearly opposite the side track, where it drops to a level with the main track, and approaches it so closely, passing through the cut, that it barely admits the passage of a wagon between the ties and the bluff. After continuing westward in this manner for some little distance, it again turns to the southward, away from the track. There is also a sleeping house used by the employees of Seufert Bros. Company, situated about a thousand feet west of the mess house, upon the same side of the railroad beyond the point of rock, and a dwelling house near it occupied by the members of the firm. The wagon road was constructed by the Seuferts, in 1885, by blasting and removing the rock. It was widened in 1886, and work was done upon it from time to time until much later.

Mr. T. J. Seufert describes the manner in which it was

done, and the subsequent use of it, as follows: "There was a road running right along the side of a rocky bluff right close up to the track. We used it for a wagon road, traveling back and forth. It was built, I think, in the spring of 1885. We blasted out all the boulders along the bluff between the track to get the road in there. The track was so close to the bluff that you could not get any road in without blasting out all the boulders that were between the track and the bluff. We blasted out enough to make a road, and from time to time widened it. That was in the spring of 1885, and we have been doing more or less blasting there ever since. The trains of the defendant and its predecessors in interest who were operating that road passed along the same while we were working, as before. There never was any intermission. They undoubtedly knew that we were working there; for we worked in the daytime, ten hours a day. The trains passed as close as we could get to the track. We could not get any closer. We were right at the end of the ties. The road ran right alongside the track, and a portion of it was within a few inches from the ties. Before we built this road persons having possession of the property got back and forth from the house to the salt tanks by traveling along the track, on the track itself. I suppose they did that ever since there was a railroad there. They did during 1882, 1883, and 1884. When we went in there, in 1882, there was a wagon road up and down the railroad track. When a train came along we had to get away with the horses and take chances. Since we have moved the road into the bluff from the railroad track it has been used continuously. It was a first-class road,—a good, clear road,—and a solid track. Anybody going along there could see that it had been traveled.   *   *   *   Everybody uses this road who comes along. They travel over that road between our place and Celilo. Indians use it, and we use it, and country people and town people use it. Our employees all use it." F. Weiler testified that "in

the fishing season a team would go past five or six times a day,—sometimes fifty times,—going up." Other testimony was adduced showing the manner of the use of the wagon road, and by whom, and of the switches and buildings in close proximity. The decedent's work was generally to the west of the cut, but upon the evening of the accident he was going from the mess house, where he had just had his supper, to the sleeping house, and in doing so was taking the usual route employed by all the men engaged in fishing. The car, to which in all probability may be ascribed the cause of the accident, was a Great Northern car, which had been loaded with wheat, and picked up by defendant's said train at Rufus, a station on the Oregon Railroad & Navigation Line, about 23 miles above, or east, of the place of accident. The flange upon the wheels of this car gave way, causing the car to leave the track, some 2,000 feet to the east; but its contact with the switch rail was perhaps the immediate cause of its complete derailment and that of the other cars in the train.

Upon the whole, we think there was testimony upon which to put the case to the jury touching the question of decedent's right to be upon the wagon road constructed upon the defendant's right of way, and the nature of such right, and by this to determine what duty the company owed the decedent, and, following in its train, the question whether the railroad company exercised due and proper precaution and vigilance to prevent injury to the decedent, under the existing circumstances and conditions. If decedent was a mere trespasser upon the defendant's right of way, or was there by passive acquiescence under a naked license of the company, then it owed him no duty requiring active vigilance for his protection, and it was not restricted thereby in the use of its tracks or cars and appliances in the prosecution of its business; but, if the decedent was there by inducement or invitation of the defendant, there was imposed upon it the

duty of active vigilance to avoid injury to him, and upon this issue we think there was testimony sufficient to go to the jury. The place of accident was at the junction of the side track, which the company was in the habit of using as a siding, and for setting out and taking on cars for the use of Seufert Bros. Company in connection with their cannery business. The wagon road at that point was in frequent and constant use by Seufert Bros. Company's employees, both on foot and with teams, especially during the fishing season, and more or less by the general public. This state of affairs continued for a long time, which, taken in connection with the manner in which the wagon road was constructed and its proximity to the side track, tends, in some measure at least, to show that defendant was cognizant of the conditions, and that they so existed with something more than its tacit consent, or, rather, that they existed with its approval. If the decedent was a licensee by invitation or inducement, then it was incumbent upon the defendant to exercise active vigilance in respect to him. It was forewarned, and should have been forearmed. This duty extends to due care and precaution in detecting and repairing defects in machinery and appliances to prevent accident, as well as an active vigilance in protecting licensees at a crossing or other public place upon its line. It does not alter the case that the defendant was carrying and using in its train a car belonging to another line, because it was responsible for its condition while it had the same in charge and was using and employing it in its service.

8.   Again, it was for the jury to determine in the present case, under proper instructions, whether the defendant had exercised such care, skill, and vigilance as to prevent cars from leaving the track, and thus doing injury to those to whom it owed the duty of protection. Upon this subject there was evidence tending to show that the cause of the

38 OR.—24.

flange giving way was a defect or flaw in the wheel at the base of the flange. Some of the witnesses described it as a crack. It was thought by all that the defect had existed for some time, possibly from the time of casting, but the witnesses disagreed as to whether it extended through the surface, or case-hardened tread, of the wheel, so as to be susceptible of discovery by inspection. A piece of broken flange was offered in evidence, showing the previous flaw or crack where it was broken from the wheel, and the physical fact was present for the jury's inspection. Although the car had been repeatedly inspected, and there was testimony showing that no such defect was discoverable, yet the whole question was for the jury to determine, whether it was not owing to the want of reasonable care, skill, and precaution in the inspection that it had not been previously discovered. Of course, the defendant was not responsible for defects unknown to it, or which could not have been detected by the application of reasonable care and skill.

In some of the cases, especially those from New York, there is a distinction made between active and passive acquiescence, or negligence by commission and by omission. Such distinction is sought to be invoked here, it being urged that, if there is here any negligence at all, it is of the latter sort, and not such as to render the defendant liable. Negligence, when applied to torts, is a negative quality, as it denotes the want of such reasonable care, prudence, diligence, skill, or vigilance in the interest of others, and for their protection against injury, as the circumstance or occasion demands, and to apply to it the qualifying terms "active" or "passive" seems inappropriate and incongruous. There are degrees of negligence, such as slight and gross; but these are not indicated by the terms "active" and "passive." Nor does it occur to us that the nature of the act, whether of omission or of commission, should make any difference in the degree of care, precaution, skill, or vigilance that should

be required in a given case.   The want of proper exercise of these conditions, when the circumstances require it, will incur liability when injury ensues.   In some instances greater care and vigilance is exacted than in others.   The *Ward Case* is a good illustration.   The company was not required to exercise vigilance in the discovery of a stranger upon the track, but if the discovery had been made in time it would then have been in duty bound to exercise the greatest diligence and skill to prevent injury.   So, also, if a train is approaching a crossing which has long been in use by the public in large numbers, there must necessarily be due caution in the ascertainment of a clear track, as well as in the prevention of collision when the track is found to be obstructed.   Again, when a person is passing over private premises, without invitation, the owner is not required to even take the precaution to provide against danger of his falling into a pit, or being injured by defective machinery; whereas, if the place be a public one, care must be exercised that a pitfall is not left exposed, or that machinery has not become so out of repair as to be a menace to those having the privilege and right to be about it.   So that the quantum of care does not depend upon whether the act is one of commission or omission, but, rather, upon the attendant and surrounding circumstances and conditions, and negligence is the want of due care in any case, measured by the standard suggested.

When the plaintiff rested his case, the defendant moved for a nonsuit upon the ground that there was not sufficient testimony adduced competent under the pleadings to go to the jury.   What we have heretofore said will indicate our views upon this subject.   It is insisted that the evidence touching the breaking of the flange from the wheel is insufficient to warrant or justify an inference of negligence; but, as we have seen, there was testimony sufficient to go to the jury as to whether the flaw, which it is evident previously

existed in the wheel, extended to the outside, so as to be visible and ascertainable by ordinary inspection, such as is usual with railroad companies. Uuon this question *Spicer v. South Boston Iron Co.,* 138 Mass. 426, is in point and instructive.

9. The defendant complains of an instruction which charged the jury that negligence cannot be presumed from the mere happening of the accident, yet that it may be from the circumstances of the transaction, if they were such as to cause them to believe that the accident would not have happened if reasonable care had been used. But, by a subsequent instruction touching the same matter, it was explained that the plaintiff must prove, by positive and affirmative evidence, the want of due care on the part of the defendant, and that the injury complained of was the direct result of such want of care. When read together, it is apparent that the jury could not have been misled or misdirected by the instruction.

10. The defendant also excepted to an instruction given relative to the duty of the defendant to inspect its cars, and its nonliability for defects not discoverable from ordinary examination. But the instruction given upon the subject is all that it could possibly ask. It is as follows: "The plaintiff claims that the wheels and flanges thereof of one of the cars operated by defendant over its tracks were cracked, broken, and unsafe. It is the duty of the defendant to inspect the cars and trucks and wheels thereof, and test the same at reasonable periods, from time to time, in order that it may be known that the same are safe. If you find that the defendant did inspect its cars, and the trucks and flanges thereof, and that the same, and particularly the car whose derailment resulted in the accident complained of, were in good condition and safe, I charge you that the defendant discharged its full duty, and cannot be held liable for defects which could not be discovered by ordinary examination."

Other instructions were excepted to, and other errors assigned, but what we have previously said upon the nature of the decedent's rights, and the duty and care to prevent injury devolving upon the defendant, is sufficient to indicate our views touching them, and thus it will appear there was no error committed respecting them.   These considerations affirm the judgment of the court below, and it is so ordered.

AFFIRMED.

Decided 4 February, 1901.

ON PETITION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

Counsel for appellant have presented a very able and exhaustive petition for a rehearing of this cause, but devoted largely to a reargument of matters heretofore fully considered.   Their chief reliance, however, is based upon questions which they insist the court overlooked in disposing of the case.

11.   Referring to the question of departure in the pleadings, it is asserted with emphasis that the complaint was intended to, and does, state the ownership of the *locus in quo* to be in Seufert Bros. Company.   But, let it be admitted that it does; it is difficult to see how this could help the defendant, because, at most, the reply contains nothing more than a new assignment,—simply a restatement of matters going to make up plaintiff's cause of action, describing more particularly what had been before described too generally,—and a departure cannot be predicated thereon:   Phillips, Code Pl., § 273; *Merch. Nat. Bank* v. *Richards,* 6 Mo. App. 454, affirmed in 74 Mo. 77.   The testimony touching the ownership of the *locus in quo* would be equally admissible under this view as under the one adopted in the opinion.

12.   The conveyances, the admission of which is complained of, if they serve no other purpose, operate as color

of title, and were therefore proper to go to the jury. And it cannot be doubted that there is ample evidence in the record upon which to put the case to the jury upon the question of adverse possession.

The defendant tried the cause in the court below upon the theory that the decedent was a trespasser, or at most was upon the defendant's right of way with its mere tacit assent, and hence that defendant owed him no duty of active vigilance to avoid hurting him, or, to state it in another form, that it owed him no duty except that it should not wantonly and willfully injure him. On the other hand, the plaintiff urged the theory that the decedent was something more than a trespasser or mere licensee; that he was at the place where he was killed by the encouragement and invitation of the defendant's officers and employees. At the trial here great emphasis was laid upon this especial issue, which received the greater attention because it presented the most important as well as the most vital question in the case. The instructions fairly presented the issue to the jury, and, while they may not be entirely unexceptionable, they are intelligible, and were undoubtedly understood by that body. The only doubt we entertained touching them was whether the court, in view of the attending circumstances and conditions, had sufficiently described or defined what would be reasonable care on the part of the defendant in the management and operation of its trains, having in mind the different phases of the proposition respecting the decedent's right to be at the place where he lost his life. But no instructions were suggested that were more explicit upon the subject. The jury could not have mistaken the real issue, so we concluded there was no error, and are of the same opinion now. It would have been a work of supererogation to have taken up the instructions one by one, and discussed them separately, the general rule being that they should be construed as a whole; hence the remark at the close of the opinion that what we

had said would indicate our views as to those instructions not specially mentioned.

13.   After plaintiff had rested, the defendant introduced in evidence a deed, dated January 7, 1896, from Seufert Bros. Company to E. McNeill, receiver of the defendant company, which recites, among other things, that "whereas, the Oregon Railway & Navigation Company is the owner of a right of way 200 feet in width across the premises above described, upon which right of way the railway of the said Oregon Railway & Navigation Company is at present constructed." Having in mind this deed, the court gave the following instruction: "The fact that Seufert Bros. Company had executed a deed to the railroad company in which they had admitted that the defendant had a right of way across the premises would not be conclusive against their right to the wagon road in this case; and the question of whether or not they did have a right to the wagon road, as well as the question as to whether or not they were licensees, and there by the invitation of defendant, are questions purely of fact for you to consider under the instructions which I have heretofore given you." To this the defendant took an exception, and requested another instruction, namely: "The plaintiff charges that the place at which the accident complained of occurred was upon the lands of Seufert Bros. Company, and that his decedent was at the time employed by the Seufert Bros. Company, and was rightfully upon the premises when he sustained the injury. But on this question I charge you that the uncontradicted evidence is that the place of the accident was upon the right of way of the defendant, and that defendant was engaged in the pursuit of a lawful business thereon." The request being refused, another exception was taken. Now it is strongly insisted that the court was in error in its treatment of the deed, in that it did not give it the effect of estopping the plaintiff from claiming that Seufert Bros. Company had any right incon-

sistent with the defendant's right of way. Primarily it may be observed that the deed is not pleaded as an estoppel, and cannot be considered in that aspect.

14. Again, the instruction asked and refused contains a vicious *non sequitur*. It is the same as saying to the jury that because the *locus in quo* was upon the right of way, therefore it could not be upon the premises of Seufert Bros. Company, and is misleading, because we have seen that the ownership of a right of way by the defendant is not inconsistent with the general ownership of the premises by Seufert Bros. Company. Nor is the fact that defendant possessed a right of way inconsistent with the idea that Seufert Bros. Company had acquired rights with reference to it as licensees. The instruction given proceeds upon this theory, and is therefore not erroneous.

It is further insisted that there was error in not giving the following instruction, viz.: "The plaintiff charges that the defendant was operating a train of cars over the premises and upon its tracks, the trucks of which were too wide for the tracks; but I charge you that there is no evidence to sustain this allegation and that you cannot consider the same." The vice of this instruction consists in the fact that it invades the province of the jury, because there was some evidence competent to go to the jury upon the subject. It was sought, by motions addressed to the court, to have the evidence taken from the jury; but it declined to grant them, upon the ground that the evidence had some tendency to prove the charge alluded to in the instruction. The tendency may have been slight, but there is no mistaking the fact that it has some bearing upon the question, and was proper to be submitted to the jury.

Having carefully reconsidered the views expressed in the opinion handed down, we find no reason to doubt their soundness. The petition must therefore be overruled.

REHEARING DENIED.