[ Argued January 15; decided March 12, 1894.]

# WARD *v.* SOUTHERN PACIFIC CO.

[ S. C. 23 L. R. A. 715; 36 Pac. 166.]

1. RAILROAD COMPANIES — NEGLIGENCE — TRESPASSERS ON TRACK.— The mere fact that persons have frequently trespassed upon a railroad track, and that the company has resorted to no means to stop such trespassers, does not amount to a permission or license to use the track as a footpath.*

2. IDEM.— A railroad company owes to a trespasser upon its track no legal duty to keep a lookout or guard him against danger.

3. IDEM.— The finding of the body of a child on a railroad track, where it had been struck by a train, raises no presumption of negligence on the part of the company, although the track was straight and clear, where there is nothing to show the circumstances of the accident, or how long the child had been on the track when struck.

APPEAL from Douglas: J. C. FULLERTON, Judge.

Action by Roland Ward against the Southern Pacific Company for damages. The complaint alleges that by the negligence of the defendant in the management of its locomotive engine, a son of the plaintiff, about six years of age, was run over and killed. The answer denies such alleged negligence, and sets up as a defense that the plaintiff and his son were contributorily negligent. The reply denies the new matter in the answer. The cause being thus at issue, a trial was had, resulting in a verdict

---

* NOTE.— Most cases as to implied license to go upon railroad tracks have related to crossings as to which, see *Central R. R. & Bkg. Co.* v. *Rylee* ( Ga.), 13 L. R. A. 634, and *note,* and *Chenery* v. *Fitchburg R. Co.* ( Mass.), 22 L. R. A. 575. But as to claim of license to use track as a footpath, see also *Anderson* v. *Chicago St. P. M. & O. R. Co.* ( Wis.), 23 L. R. A. 203. As to presumption of negligence of person found killed by alleged negligence of another, see *Hendrickson* v. *Great Northern R. Co.* (Minn.), 16 L. R. A. 261, and *note.* The question of presumption in the present case, it will be noticed, is that of the negligence of the railroad company and not that of the trespasser.— REPORTER.

for the plaintiff, and from the judgment which followed this appeal was taken.                                    REVERSED.

*Messrs. Earl C. Bronaugh* and *Wm. D. Fenton* ( *Messrs. Lewis L. McArthur* and *Earl C. Bronaugh, Jr.* on the brief), for Appellants.

*Mr. J. W. Hamilton,* for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

It appears that at the close of plaintiff's testimony defendant interposed a motion for judgment of nonsuit, which the court overruled, and the defendant excepted. As the propriety of this ruling is questioned, our present inquiry is as to whether the testimony for the plaintiff is legally sufficient to warrant the verdict in his favor. The record discloses that the testimony for the plaintiff in substance is that he is a farmer, and that Freddie Ward, the deceased, who was his son, was about six years of age; that the railroad track passes through a field of plaintiff's farm, within about fifty yards of his residence, which stands inside of an enclosed yard, and adjoining this yard is the barn lot, from which a gate opens into said field; that on the afternoon of the day of the ac- cident plaintiff was engaged in hauling wood through his barn lot to the side of the railroad track, where he piled it; that shortly before four o'clock in the afternoon of said day, which was the usual hour for the Southern Pacific train to pass his place in going to Roseburg, the plaintiff, having loaded his wagon, said, to his son, " Run and open the gate so that I can get the load off before the train comes," which being done, he drove his team through the gate to the wood pile beside the track ( the distance between the gate and wood pile being about fifty yards), and that the gate was left open by his direc-

tion; that before reaching the wood pile the plaintiff looked back, and, not seeing his son, supposed that he had returned to the barn; that the last time plaintiff saw his son he was at the gate, and that about twenty minutes thereafter, but after the train had passed some five or ten minutes, Mrs. Clark found the dead body of the child, and gave the alarm, when the plaintiff ran to the spot, and saw the body of his son lying in the middle of the railroad track, with the shoulders about five or six inches from the rail, and the head dissevered from the body lying outside the rail near the wood pile, and some thirty feet from where the body lay; that from the time he last saw his boy at the gate, until the body was found by Mrs. Clark, the plaintiff did not know where his son was, but supposed that he was at the house, though he did not tell him to go there, or "notice him after that"; and that the wood pile at which plaintiff was unloading his wagon when the train passed was about seventy feet long, six or seven feet from the track, and eight feet high. There was some evidence tending to show that school children and other persons sometimes used the railroad track as a footpath, but none showing that the company knew or had notice that the track was so used; and the plaintiff admitted that he had not seen any school children so using the track for about a year previous to the death of his son. It was also shown that the track was open and straight, from the direction which the train came, for nearly half a mile before the place was reached where the child was found.   This being substantially all the evidence for the plaintiff, the contention for the defendant is that such evidence wholly fails to prove the negligence alleged as a cause of action, and that, therefore, the trial court erred in not granting the motion for a nonsuit. As argued, this contention involves two points: First, that the evidence totally fails to show that the

injury and death of plaintiff's son was caused by the
negligence of the defendant or its employés in the man-
agement of the train at the time of the accident; and,
second, that, conceding the negligence of the defendant,
the plaintiff's evidence shows that in view of the circum-
stances he was guilty of negligence contributing to pro-
duce the fatal occurrence in leaving his son in such
dangerous proximity to the railroad track.

As to the first point, it is put upon the ground that,
as shown by the evidence, the company had the exclu-
sive right of way where the accident occurred to the
deceased, and hence that he was a trespasser upon its
track, to whom the company owed no legal duty to keep
a lookout or guard him against danger. The evidence
shows that the body was found, not at a public crossing,
or where people habitually pass over the track, and are
known to be in the habit of doing so by those operating
the trains, but in a field through which the railroad
.passes, and over which the company had the sole right
of way. Some persons or school children living in the
vicinity of the railroad track occasionally used it as a
footpath, but without the knowledge or permission of the
company; it was a license of their own taking which
they took *cum periculo*, or subject to its perils. "Persons,"
says Mr. Justice NELSON, "living in the vicinity of rail-
roads, who use the tracks or the embankments, or the
space between the tracks, as a footpath are wrongdoers,
unless permission is granted by the company so to use its
tracks. Although pedestrians, or the public generally,
travel over them without objection, people go there at
their own risk, and, as said by the supreme court of
Massachusetts, 'enjoy the license subject to the perils':
*Gaynor* v. *Old Colony R. Co.* 100 Mass. 208, 97 Am. Dec.
96"; *Grethen* v. *Chicago, etc. Ry. Co.* 22 Fed. 609. User
of this sort will not establish a public way over the track,

or relieve those so using it from the imputation of being trespassers. A railroad company has the right to the exclusive use of its track, unless a right of way or foot-path over it has been acquired by its consent, express or implied, or a joint use has been reserved to the public, as at a public crossing. There is no doubt that if the company permitted the public, for a long time, to travel or habitually pass over its track at some given point, or use it as a footpath between different points, without objection or hindrance, its consent or acquiescence in such use might be presumed, and it would be bound to manage and run its trains with reference thereto. In such cases the company and the people have a common right or joint use in the track as a public way, and the right of each must be regarded. But the mere fact that persons have frequently trespassed upon the track, and that the company has resorted to no means to stop such trespasses, does not amount to a permission or license to use the track as a footpath. There is nothing in the case at bar to indicate that the public have acquired any right to use the track as a footpath or highway, with the consent or by the acquiescence or sufferance of the company, at the place where the accident happened. Such being the case, the deceased was on the track at a place where the company had the sole right of way, without its consent or acquiescence, and, in legal contemplation, he was wrongfully there, and must be regarded as a trespasser.

2. But, conceding the fact that the deceased child was unlawfully upon the track, and a trespasser, it is insisted by counsel for the plaintiff that, as the day was clear, and the track open and straight for nearly half a mile before the place was reached where the accident occurred, if the engineer of the company operating the train had kept such a vigilant outlook as the proper discharge of his duties required, he must have discovered

the child in time to have stopped the train before reaching him, and his not doing so is negligence, and the proximate cause of the injury. In this view, the railroad company is bound to run its trains with reference to the probability of accident to trespassers on its tracks. This duty is founded upon the assumption that, although the defendant is not bound to exercise for the safety of a person on its track at a place where there is no public crossing that degree of diligence and care required as to passengers, yet, as the defendant employs a dangerous force in running its trains, it is bound at least to exercise ordinary care, when so employing it, so as to avoid injury to persons or property which may happen to be on its track; and if, by using such care, the accident would not have happened, the failure to use it, even though the injured party be a trespasser, is negligence which would render the defendant liable. This principle finds its illustration in *Houston R. R. Co.* v. *Sympkins*, 54 Tex. 615, 38 Am. Rep. 632, where the plaintiff, lying in a state of insensibility on the railroad track, not at a public crossing, was run over by the cars, and seriously injured. The court in that case says: "If the engineer on the approaching train keeps that lookout which is required of him at all times, not only to secure the safety of the train, but to avoid injury to any animal or person on the track, this person lying there in open view must be discovered. Not to discover him is, under the circumstances, negligence; and that negligence is the proximate cause of the injury, whilst the negligence of the party in going on the track is only a remote cause." Within this principle, "keeping a lookout" is regarded as a duty always devolving upon those running trains; and a failure in its performance, whereby an injury happens to a trespasser on the track, is negligence which must' be regarded as the proximate cause of the injury. As, in

this view, the duty of keeping a lookout is a requirement of ordinary care, although a person may be improperly or unlawfully on the track of a railroad, still that fact will not discharge the company or its employés from the observance of such care, and hence a "lookout" who does not see what, with due care, should have been seen, would not be in the proper discharge of his duty.

In *Harlan* v. *St. Louis Ry. Co.* 65 Mo. 22, HENRY, J., states the principle in this wise: "When it is said, in cases where the plaintiff has been guilty of contributory negligence, that the company is liable if, by the exercise of ordinary care it could have prevented the accident, it is to be understood that it will be so liable if, by the exercise of reasonable care, after a discovery by defendant of the danger in which the injured party stood, the accident could have been prevented, or if the company failed to discover the danger through the recklessness or carelessness of its employés, when the exercise of ordinary care would have discovered the danger and averted the calamity." Under this rule, ordinary care with regard to trespassers is exacted, and, in the absence of such care, a railroad company will be held liable. Hence the plaintiff contends that the failure of the engineer of the defendant to see the plaintiff's son on the track, although a trespasser, when he could have seen him if he had kept that lookout which his duty required, is a want of ordinary care, or negligence, which was the proximate cause of the injury, and renders the defendant liable. On the other hand, the defendant claims that it is not bound to keep a lookout for trespassers upon its track, but only to avoid injury to them, if possible, when their presence and liability to danger become known, and that this rule applies in the case of a child just as it does in that of a grown person. In short, the contention for the defendant is that the company is not liable to trespassers on its track, except

where the injury was wilful, or where the company, after discovering his presence, fails to exercise reasonable care to prevent injury. In this view, the duty of the company begins when the trespasser is first discovered, and its extent is to refrain from doing him wilful or wanton injury. It is put upon the principle that it is not negligence to omit to do an act, unless there was a legal duty to perform it. As the railroad company is entitled to the exclusive use of its track, and is bound by no contractual relations to provide for the safety of trespassers, it is under no legal duty or obligation to take precautions, or keep a lookout against possible injuries to them, and hence the conclusion that the failure of those operating trains to see trespassers upon the track, whereby injury results to such trespassers, although they could have been seen if they had kept a watch, would not be negligence. The policy of the law is to make the track of a railroad clear of all obstructions which might impede its free and exclusive use, as being necessary, not only for the protection of the company and its employés, but for the safety of the traveling public. "Public policy," says BRANNON, J., "looking to the safety of not only those who walk on railroad tracks, but of employés and passengers on trains, requires that the law forbid the use of railroad tracks for that purpose": *Spicer v. Chesapeake & O. Ry. Co.* 34 W. Va. 516, 11 L. R. A. 383, 12 S. E. 533.

The track is the private property of the company, and was not built to be used as a highway for pedestrians. Being intended for the sole use of the company, except at public crossings, the law will not sanction its use as a footpath. Nor will the fact that people may have frequently used the track to walk on change the law, or render their act less unlawful. In some countries it is made a penal offense to go upon the track. Although it is not so with us, yet, as STRONG, J., says, "it is a civil wrong of

an aggravated nature for it endangers not only the tres-
passer, but all who are passing or transporting along the
line": *Philadelphia & R. R. Co.* v. *Hummell*, 44 Pa. St.
378, 84 Am. Dec. 457. As the law holds the company to
a high degree of responsibility for the safety of its passen-
gers and public convenience exacts rapid transit, common
justice requires that the company should have a clear
track: *Toomey* v. *Southern Pac. Co.* 86 Cal. 374, 10 L. R.
A. 139, 24 Pac. 1074. "We hold these corporations," said
PAXSON, J., "to a strict line of responsibility whenever
passengers are injured by accidents to their trains. It
follows that we should be equally emphatic as to their
control of their tracks. Except at crossings, where the
public have a right of way, a man who steps his foot
upon a railroad track does so at his peril. The company
has not only a right of way, but such right is exclusive
at all times, and for all purposes. This is necessary, not
only for the proper protection of the company's rights,
but also for the safety of the traveling public. It is not
right that the lives of hundreds of persons should be
placed in peril for the convenience of a single foolhardy
man who desires to walk upon the track. In England it
is a penal offense for a man to be found unlawfully upon
the track of a railroad. It would add materially to the
public safety were there a similar law here": *Mulherrin*
v. *Delaware R. R. Co.* 81 Pa. St. 366.

While it is true that the company owes no duty to a
trespasser, and is entitled to assume that its track is clear,
except at public crossings, or other places which the pub-
lic frequents, of which it has knowledge, it is not meant
that he may be run down, or that a wilful or wanton in-
jury inflicted upon him would be justifiable. The fact
that a person may be a trespasser when using a railroad
track as a sidewalk will not justify the infliction of in-
jury as a punishment, or out of recklessness. After the

company discovers the trespasser, it becomes its duty to use care and diligence commensurate with the danger of his position. But the company is no more bound to keep a lookout for a trespasser than it would be to furnish appliances for his benefit as such. "The company," said Zollars, J., "at all times owe a duty to passengers upon its trains to keep a lookout for obstructions upon the track, and if it fail to do so, and by reason of such failure a passenger suffers injury, the company is liable on the ground of negligence. But it cannot be said 'with reason that it owes such duty to one trespassing upon the track. As to him it is not bound to anticipate such intrusion, and is not liable if a collision occurs without its knowledge": *Terre Haute R. R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719. It is therefore not a part of the duty of a railroad company, in exercising ordinary care in the operation of its trains, to provide against the possibility of trespassers being on its track. This being so, the company is not bound to anticipate their presence, or to take precautions for their safety, nor is it liable for injury to such trespassers if a collision occurs without its knowledge.

In *Woodruff* v. *Northern Pac. R. R. Co.* 47 Fed. 689, it was held that it was not wilful negligence in the engineer not to see a trespasser on the track, though, by ordinary care and diligence he might have discovered him in time to have avoided the injury. In that case the complaint charged that the child, being twenty-two months old, went upon the track and was run over by a passing train, and so injured as to be crippled for life, and that the engineer could have seen the child on the track in time to have stopped the train and averted the disaster, and that the failure to see the child and stop the train was negligence. Upon demurrer, these facts were held insufficient to constitute a cause of action. Hanford, J., said: "The

defendant was not bound by any contract with the plaintiff to take care of, or provide for the safety of, his infant, and owed no duty to look out for intruders upon its track, on ground dedicated and reserved for its exclusive use as a right of way.. The complaint does not charge that the child was enticed or licensed by the defendant to come upon its track, nor that the place where the injury happened was at a public crossing, or within a public highway, nor that the defendant's servants,. after seeing the child, intentionally or wantonly committed the injury; and without one or the other of these elements, or something equivalent thereto, I cannot regard the defendant's conduct as being morally culpable or legally wrong, so as to give rise to a legal claim for damages." A like principle is announced in *Givens* v. *Kentucky Cent. Ry. Co.* 15 S. 1057, where a boy nine years old was killed by a locomotive backing upon him when he was on the. track at a place where the company had the exclusive right of way. HOLT, C. J., said: "The deceased was in fact a trespasser, and those in charge of a train are, under such circumstances, ordinarily not required to keep a lookout, and guard against danger to such a person. They are not required to presume that any one will trespass upon the exclusive right of way of the company; and they are therefore not bound to look out for them, but only to avoid injury to them, if possible, when their presence and liability to danger become known. This rule applies in the case of a child just as it does in that of a grown person. If those operating a train were required to look out and guard against danger to children trespassing upon the track, then this would necessarily afford an opportunity to see all other persons who might be upon it, and in danger. Undoubtedly, a greater degree of care is required of them as to children not old enough to be aware of the danger than as to grown persons, when they have been

once discovered upon or near the track; but until their presence is known the rule applies equally to both. An exception to this rule exists, however, where a train is passing through a town or city, and where people are likely to cross the track at any point, and are known to be in the habit of doing so by those operating the train. In such a case there is constant danger to life; and out of regard for it, those in charge of a train must look out for persons who may be upon the track, and give such notice of its approach and movements, and so regulate its speed, as is likely to warn them of danger, and enable them to get out of the way." For further reference see notes to Am. & Eng. Enc. title "Railroads," pages 935–937, and notes to *Philadelphia R. R. Co.* v. *Troutman,* 6 Am. & Eng. Ry. Cas. 117–120.

The principle to be deduced from these authorities is that a railroad owes no duty of keeping a lookout for persons on its track, where it is entitled to have it clear, and that as to such it is not liable if a collision occurs without its knowledge. If, therefore, the plaintiff's son was a trespasser upon the company's track, the failure of the engineer on the approaching train to discover him, by reason whereof the accident happened, was not negligence, as the defendant owed the deceased no legal duty to keep a lookout.

3. Now, the facts show that the plaintiff's son was found dead, and that his death was the result of a collision with the train upon the track of the defendant at a place where the railroad company was not bound to anticipate his presence, and where he was a trespasser, and that those operating the train had no knowledge of the fatal occurrence until they were informed by telegraph, after they had reached the city of Roseburg. Assuming, then, that plaintiff's son was on the track, and that the engineer could have discovered him in time to

have stopped the train, if he had kept a lookout, his failure so to do would not render the company liable for neglect to perform any duty it owed him within the principle of the authorities cited, except *Houston R. R. Co.* v. *Sympkins*, 54 Tex. 615, 38 Am. Rep. 632, where the fact appeared that the plaintiff was lying on the track, and that the engineer could have discovered him in time to have stopped his train without running over him. But in the case at bar, there is no evidence showing that the deceased was on the track when killed, other than the inference from the finding of the body, or, if so, how he came to be there, or how long he had been there when struck by the train, or whether he was on the track a sufficient length of time before the collision, or entered upon it a sufficient distance ahead of the train, so that he could have been seen or discovered by those operating it in time to have avoided injuring him. For aught that appears from the evidence the boy may have come in sudden contact with the train in such a way that his presence might not be discovered by the most vigilant "lookout." However this may be, the circumstances attending his death are not known, except that it resulted from collision with the locomotive, which is evidenced by his body having been found on the track. Whether he was on the track, though it was straight and clear, a sufficient length of time before the collision so that the engineer on the lookout could have seen him in time to have averted the disaster, is not shown by the evidence. While we recognize the rule that, if there is any evidence tending to show negligence upon the part of the company or its employés, or from which an inference of it might be fairly drawn, or about which different men might draw different conclusions, such evidence should be left to the jury, unless it should appear that the accident would not have happened but for the con-

tributory negligence of the party, we do not think the evidence for the plaintiff shows a case of negligence sufficient to be submitted to a jury. In view of these considerations, it is not necessary to consider whether the plaintiff was guilty of contributory negligence. It results that the motion for nonsuit should have been allowed, and that the judgment must be reversed.

REVERSED.