Argued February 27, decided April 1, 1913.

**DEVROE v. PORTLAND RY. L. & P. CO.***

(131 Pac. 304.)

**Carriers—Carriage of Passengers.**

1. In view of Article VII, Section 3 of the constitution, as amended in 1910 (see Laws 1911, p. 7), providing that no fact tried by a jury shall be re-examined in any court, unless the court can affirmatively say there is no evidence to support the verdict, evidence held, in an action against a street railway company for wrongful death of a passenger, sufficient to support the verdict.

**Trial—Questions for Jury.**

2. Where more than one inference may be legitimately drawn from the evidence, one favorable and the other unfavorable to the defendant, there is a question for the jury.

**Carriers—Carriage of Passengers—Questions for Jury.**

3. In view of Section 868, subd. 2, L. O. L., providing that on all proper occasions the jury shall be instructed that they are not bound to find their verdict in accordance with the greater number of witnesses, evidence in an action against a street railway company for the wrongful death of a passenger held to present a question for the jury.

**Trial—Instructions—Request.**

4. In an action against a street railway company for the wrongful death of a passenger, where the court, at request of defendant, instructed the jury not to find for plaintiff unless the

accident happened as alleged in the complaint, that instruction is sufficient, in the absence of a request for a more specific instruction.

### Carriers—Carriage of Passengers—Who are Passengers.

5. While the relation between carrier and passenger can only be created by contract, express or implied, one may become a passenger by boarding a street car at a point other than at a regular stopping place, where it was customary for persons to board the car at that point when it came to a full stop, and the servants in charge of the car are bound to exercise care in protecting one so boarding the car.

### Trial—Instructions—Instructions Covered by Those Given.

6. In an action against a street car company for the wrongful death of a passenger, where the court charged that the particular negligence averred was that, while the car upon which the decedent desired to embark was standing still, he attempted to board it, and was in the act of getting on the car, when it suddenly started, throwing him to the ground and causing his death, and that there could be no verdict in favor of plaintiff unless the accident happened in the manner alleged, the refusal of an instruction to find for defendant, unless deceased was killed by reason of the particular negligence charged in the complaint, was proper, being covered by the instruction given.

---

* The question of the liability of a carrier for injuries to intending passenger who enters car prematurely is treated in a note in 35 L. R. A. (N. S.) 583.

As to presumption of negligence from sudden start, stop, jolt, or jerk of car, see note in 13 L. R. A. (N. S.) 611.        REPORTER.

From Multnomah:  WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Louise Devroe, Administratrix of the Estate of Clement Devroe, deceased, against the Portland Railway, Light & Power Company, a corporation, for personal injuries.  The jury returned a verdict in favor of plaintiff, and from a judgment thereon, defendant appeals.

On the afternoon of December 9, 1910, plaintiff's intestate, Clement Devroe, met his death by being crushed

under the wheels of the trailer of a St. Johns electric train operated by defendant. The accident occurred at a point between Beech and Failing Streets, on Union Avenue, in the City of Portland. The plaintiff's complaint charged, as the cause of the accident: That defendant's train, consisting of two of its street cars, was proceeding in a southerly direction upon the westerly track on Union Avenue, and came to a stop between Beech and Failing streets. There Clement Devroe offered himself as a passenger, and while in the act of "stepping and drawing himself into said car, and had taken hold of the handhold upon said car, the defendant, its agents, servants, and employees, in a careless and negligent manner, and without giving any care or attention as to whether said Clement Devroe would be injured thereby or not, suddenly, and without any warning to the said deceased, started said train with a jerk and with such force that said deceased was thereby thrown off his feet, and thrown and caused to fall between the first and second cars of said train, in such a manner that the last car of said train struck said deceased and dragged him under said car, the wheels thereof cutting, mangling, tearing, and lacerating said deceased, and causing and permitting the wheels of said car to run upon and over said deceased, thereby injuring him so severely that he died immediately. That said defendant's said employes then and there knew, or, in the exercise of reasonable care, ought to have known, that said deceased was attempting to board said car when the said train was so started as aforesaid; and said deceased was so thrown under the wheels of said car and injured and killed as aforesaid without any carelessness or negligence on his part, and solely * * on account of the negligence and carelessness of the defendant, its agents, servants, and employees.

Defendant answered, and pleaded, among other things, that at the time of the accident, and while the cars were

in motion and proceeding at too fast a speed to permit one to board the same in safety, the decedent carelessly, recklessly, and negligently, and without exercising proper care or precaution for his own safety, attempted to board or swing upon the rear platform of the head motor car, and while so doing missed his footing, fell between the cars, and was killed; that at the time of the accident the decedent well knew, and in the exercise of ordinary and reasonable care should have known, that the cars were in motion and moving at too fast a speed to permit him to board the same in safety, but nevertheless he recklessly, negligently, and carelessly attempted to board the car while in motion, by reason whereof he was killed. ·

At the trial the following facts appeared: Defendant's railway track, on which the accident happened, was one on which Woodlawn, St. Johns, and Alberta trains were operated. The decedent had boarded a Woodlawn car bound for Portland. Before the accident, and about midway between Beech and Failing Streets, this car switched to the east track on Union Avenue in order to let a following St. Johns train go by. The decedent got off from the Woodlawn car while it was switching and undertook to board the St. Johns train. The block in which the accident occurred is about 400 feet in length. The St. Johns train is a through train; that is, it does not stop to pick up passengers at all points, but it does stop to let persons off at any street, as the evidence shows. A through car always stops at intersecting tracks, and often at the switch between Beech and Failing Streets, at which points it is customary to take on passengers. It is necessary for the local cars to switch at certain points in order to permit the through cars to pass, as the latter have the right of way.

The controversy is whether or not the St. Johns train was in motion when the decedent undertook to board it.

Defendant contends that the St. Johns train did not stop at the switch, and the plaintiff asserts that it did on this occasion, as it very frequently stopped there to take on passengers while the other cars were switching out of its way.

The testimony on behalf of plaintiff upon this point was confined to two witnesses. Thomas Litzer, who was in the railway mail service, and who resided in Portland at the time of the accident, deposed in substance that the decedent, Clement Devroe, got on a Woodlawn car upon which he was riding, at Shaver Street, north of where the accident occurred; that after Mr. Devroe got on the car, the St. Johns car was close behind them, and that when they passed Failing Street it was right at their heels; that from there on they left the St. Johns car just a little ways behind, and crossed the switch between Failing and Beech Street; that about the time the conductor threw the trolley over to switch the car back over the east track, the St. Johns car caught up with them and was standing dead still, waiting for the Woodlawn car to switch out of the way; that when they started to switch back Devroe passed out of the front door as the car was half-way over the "cross-over"; that the Woodlawn car backed north onto the east track halfway past the rear car of the St. Johns train, and stopped opposite to it, so that his (Litzer's) position was about the middle of the St. Johns rear car, facing the same; that, when the Wood-lawn car stopped, the St. Johns car was still standing, and that it must have stopped at least three or four seconds; that it started with repeated little sharp starts.

W. G. Holcomb, a salesman, of Portland, who was called by plaintiff, testified to the effect that the St. Johns train stopped at Failing Street; that he got on the front platform of the rear car and stood there as the train pulled out; that it ran for some distance and came to another stop of possibly two seconds; that as he stood

there he noticed a man come out from the curbstone and take hold of the rear handle bar of the motor car as it started, about 8 or 9 feet from where he was standing; that the man got one foot on the step, and his left hand hold of the rear handle bar; that, just as he did so, the car started up suddenly, and his foot slipped off; that he hung there for a minute, and dropped off under the trucks of the rear car; that the conductor of the rear car was standing at the front end until after the accident happened, and that just as the man dropped under the car he reached up for the bell cord. To the following questions Holcomb replied thus:

"Q. Would you say whether or not he was looking at you at the time he attempted to get on?"

"A. I would say he did."

"Q. Was he in a position where he could see him?"

"A. Yes, sir."

"Q. What would you say as to whether or not he was looking at the man when the man came up and took hold of the car?"

"A. I should say he was looking at him."

G. W. Dodge, motorman on the St. Johns train, witness for defendant, testified in substance as follows: That they made their last stop of half a second at Failing Street; that they did not pick up passengers, unless they happened to get on where the car made stops; that, in coming into town, he made it a rule to lay about a block behind the other car; that the Woodlawn car, at the time he stopped, was 200 feet ahead of him, which would place it at the switch; that, while they were unloading passengers, the Woodlawn car was crossing over to the other track, so that they could go ahead; that by the time they got fairly started the Woodlawn car had crossed over to the other track, and that it was not necessary for him to make a stop at that point; that his speed

kept increasing to 10 miles an hour, he judged, until he got the emergency bell to stop; that he did not know of any one getting on between Beech and Failings Streets until after the accident; that the car stopped within 50 or 60 feet. On cross-examination this witness testified that frequently persons got on at the switch, provided that they had to make a stop there. To the following question, "Did you see anybody at the switch when you got there?" he answered, "I saw a man standing off towards the sidewalk;" and to the question, "Waiting to get on?" he replied, "I suppose so."

W. H. Baldwin, a witness for defendant, testified in effect that he saw them make the switch; that he saw the St. Johns car coming down with three or four or five men scrambling to get on; that they were in the habit of getting on these cars every morning.

L. W. Edwards, conductor on the Woodlawn car at the time of the accident, testified for defendant in part as follows: "Well, the best I remember the St. Johns car stopped at Failing Street, and by the time—I suppose by the time he stopped we were almost down to the switch. Of course, there being no overhead wires for the trolley to follow back, we stopped and I went around my car; kicked the switch over with my foot. I think I had to get on the bumper of my car, on the back end of the car, and take hold of the rope and pull the trolley off after we got started back. Then I pulled the trolley off and threw it across to the other wire. * * You see I had to put my pole on first, and by the time I got my pole on and looked for the St. Johns car, I judge it was from 20 to 30 feet behind, still back of my car; that is, the front end of the St. Johns car. * * I judge it was moving 4 or 5 miles an hour anyway, 6 probably. * * I know he didn't stop any more."                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble, Messrs. Snow & Mc-*

*Camant* and *Mr. George B. Guthrie,* with oral arguments by *Mr. Zera Snow* and *Mr. Guthrie.*

For respondent there was a brief over the names of *Messrs. Davis & Farrell, Mr. Martin L. Pipes* and *Mr. Wilber Henderson,* with oral arguments by *Mr. Wilfred E. Farrell* and *Mr. Pipes.*

MR. JUSTICE BEAN delivered the opinion of the court.

We have set out sufficient evidence to show that it is exceedingly contradictory. There were several other witnesses for defendant, who testified much to the same effect as those above named. In the brief of defendant the evidence is discussed at length, and we are urged to set aside the verdict on the ground of the insufficiency of the evidence. The pivotal question is tersely stated thus: "Was the car in motion and traveling so rapidly that it was the height of folly to attempt to board it, either at a stop point or at a nonstop point, it makes no difference which in the discussion of this question?" Counsel for defendant requested the court to direct the jury to return a verdict in favor of defendant.

Section 3, Article VII, of the constitution, as amended in 1910 (Laws of 1911, p. 7), provides that no fact tried by a jury shall be otherwise re-examined in any court of this State unless the court can affirmatively say there is no evidence to support the verdict. There was evidence to the effect that the car stopped at the switch mentioned, and, to sustain plaintiff's case, sufficient to be submitted to the jury. In Moore, Carriers, 541-543, it is stated thus:

"The relation between carrier and passenger can only be created by contract, express or implied. * * The general rule is that any person whom a common carrier has contracted, expressly or impliedly, to convey from one place to another, in consideration of the payment of fare, or its equivalent, and who, in the course of the performance of such contract has been received by the

carrier under its care, either upon the means of conveyance, or at the point of departure of that conveyance, is a passenger."

In a case where there is substantial evidence sustaining a verdict, although there be other strong contradictory evidence, we are prohibited from disturbing the verdict. *Wills* v. *Palmer Lumber Co.,* 58 Or. 536 (115 Pac. 417) ; *Purdy* v. *Van Keuren,* 60 Or. 263 (110 Pac. 149) ; *Atherton* v. *Walling,* 61 Or. 384 (121 Pac. 796) ; *State* v. *Michellod,* 62 Or. 271 (124 Pac. 263) ; *Hofer* v. *Smith,* 65 Or. .... (129 Pac. 761, 763).

2. The rule is that, if two inferences may be fairly and legitimately deduced from the evidence, one favorable and the other unfavorable to the defendant, a question is presented which calls for the opinion of the jury. Where the proof of the accident is accompanied by proof of facts and circumstances, from which an inference of negligence may or may not be drawn, the case cannot be determined by the court as a matter of law, but must be submitted to the jury. *Anderson* v. *North Pac. Lbr. Co.,* 21 Or. 281 (28 Pac. 5) ; *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 101 (96 Pac. 545) ; *Geldard* v. *Marshall,* 43 Or. 438 (73 Pac. 330) ; *Miller* v. *Inman,* 40 Or. 161, 166 (66 Pac. 713).

3. Regarding conflicting evidence, Section 868, subd. 2, L. O. L., directs that on all proper occasions the jury shall be instructed that they are not bound to find a verdict in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence that does satisfy their minds. It was especially the province of the jury to pass upon the conflicting evidence in this case. It was for them to find, from all the facts and circumstances in evidence, what the truth of the matter was. It being in evidence that the Woodlawn car and the following St. Johns train were

close together at Failing Street, 200 feet north of where the casualty occurred, the jury should determine whether or not there was time for the Woodlawn car to stop, to have the trolley changed, and to switch back onto the east track, while the St. Johns train was stopping at Failing Street (half a second, as testified by Mr. Dodge), without causing the latter train to wait at the switch for that to be done.

4. It is argued by defendant's counsel that the court erred in not instructing the jury as to defendant's knowledge or means of knowledge of plaintiff's intestate attempting to board the car. As to this matter the complaint alleged:

"That said defendant's said employees then and there knew, or in the exercise of reasonable care ought to have known, that said deceased was attempting to board said car when the said train was so started as aforesaid."

The court, at the request of the defendant in the charge above quoted, informed the jury that they could not find for plaintiff unless they found that the accident happened as alleged in the complaint. This instruction was correct as far as it went. Had defendant desired it to be more specific, its counsel should have called the attention of the court to the point, and should have requested an additional instruction; otherwise, it would be assumed that the party assented to the charge as given. We find no such request. *Kincart* v. *Shambrook,* 64 Or. 27 (128 Pac. 1003); *McClung* v. *McPherson,* 47 Or. 73, 76 (81 Pac. 567: 82 Pac. 13).

5. The evidence tended to show, and the jury evidently believed, that it was the custom to receive passengers, when the cars stopped, at the point where the accident occurred; that the motorman and conductor of the St. Johns train saw the decedent at the time he attempted to board the car; and that the car came to a full stop, and other passengers got on at this point at the time of the accident. The case at bar differs from the case of *Mc-*

*Carty* v. *St. Louis & S. Ry. Co.,* 105 Mo. App. 596 (80 S. W. 7, 8), cited with other cases and relied upon by defendant, where plaintiff attempted to board a street car, on the wrong side of a street crossing, at a switch. There was no testimony that either the conductor or motorman saw the plaintiff before or at the time he attempted to get aboard, or knew that he desired or was trying to become a passenger. The conductor was not shown to be looking toward the plaintiff. In that case defendant had a verdict, and there was a reversal. The court said:

"If the testimony had shown it was usual to receive passengers there, the plaintiff's position would be well taken. * * If there was a usage to take passengers at the switch, the carmen would have been bound to watch and be as careful about starting there as at far crossings—the common and appropriate localities for taking passage—for then persons would have a right to board cars, and the operatives good reason to expect them to do so. *Washington R. R. Co.* v. *Grant,* 11 App. D. C. 107; *McNulta* v. *Ensch,* 134 Ill. 46 (24 N. E. 631) ; *West Chicago St. Ry.* v. *Manning,* 170 Ill. 417 (48 N. E. 958: 70 Ill. App. 239)."

Applying this rule, it brings us back to the main question settled by the verdict, to wit: Did the car stop at this switch?

6. No exceptions were taken to the instructions given to the jury. Defendant's counsel duly saved exceptions to the refusal of the court to give certain requested instructions, and assigns such refusal as error. The second assignment of error is based upon the refusal of the court to give the following instruction:

"In this action you should return a verdict in favor of the defendant, unless you are satisfied by a preponderance of evidence that the deceased was killed by reason of the particular negligence charged against the defendant in the complaint, and that said accident happened without any negligence on the part of the deceased."

The defendant also requested the court to instruct the jury that, if they believed that the accident could not have been prevented by proper care and was an unavoidable one, plaintiff could not recover. The requested instructions were fully covered by those given by the court, one of which was given at defendant's request, as follows:

"The particular negligence with which the defendant in this case is charged is that, while the said car upon which he desired to embark as a passenger was standing still on Union Avenue, between Beech and Failing Streets, the deceased attempted to board said car, and while he was in the act of getting on said car that it suddenly started forward with a jerk, throwing him to the ground and causing the injury complained of. This is the only negligence charged in the complaint, and I instruct you that you cannot return a verdict in favor of the plaintiff in this case unless you find that the accident happened in the manner alleged in the complaint."

The court also instructed the jury to the effect that plaintiff must prove the alleged negligence by a fair preponderance of the evidence, and that if plaintiff's intestate attempted to board the car after the same had started and was in motion, or was guilty of any negligence contributing to the injury, plaintiff could not recover. The cause was fairly submitted to the jury.

Finding no error in the record, the judgment of the lower court is affirmed.           AFFIRMED.