Argued April 7, reversed May 19, 1914.

# RICHARDSON *v.* PORTLAND RY., L. & P. CO.*

(141 Pac. 749.)

**Carriers—Carriage of Passengers—Commencement of Relation.**

1. In an action against a street railroad company for the death of one who attempted to board a car while in motion at a crossing, which a sign carried by the car indicated was not a regular stopping point for the car, it was error to submit to the jury the question whether the relation of the passenger and carrier existed between decedent and the street railroad company; since an intending passenger cannot make a contract or cast an obligation upon the carrier to stop except at stopping places.

> [As to liabilities and duties of street railways to passengers, see note in 118 Am. St. Rep. 461.]

**Negligence—Contributory Negligence—Last Clear Chance.**

2. In an action against a street railroad company for death caused by an attempt to board a car in motion, where the decedent was grossly negligent, an instruction as to liability of the company for failure to stop the car in time to avoid the consequences of decedent's negligence, leaving out of consideration the question of discovery of the decedent's peril and the prompt action of the company's employees thereafter, is error; the last clear chance doctrine being applicable only if the defendant by reasonable care after a discovery of the peril could have prevented the accident.

> [As to what contributory negligence is and when it prevents a recovery, see note in 8 Am. St. Rep. 849. As to when contributory negligence does not bar recovery, see notes in 30 Am. Rep. 190; 38 Am. Rep. 637. As to concurrent negligence of person injured as defeating recovery under last clear chance doctrine, see note in Ann. Cas. 1912B, 888.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is an action by John Y. Richardson, administrator of the estate of Benjamin S. Screven, deceased, against the Portland Railway, Light & Power Company, a corporation, to recover damages for the death

---

*The question of the applicability of the doctrine of last clear chance where danger not actually discovered is discussed in notes in 55 L. R. A. 418 and 36 L. R. A. (N. S.) 957. And as to whether wantonness or willfulness, precluding defense of contributory negligence, may be predicated of the omission of a duty before the discovery of a person in a position of peril on a railroad or street railway track, see note in 21 L. R. A. (N. S.) 427.    REPORTER.

of B. S. Screven, which occurred in the following manner: Defendant was operating an electric train of two cars on Hawthorne Avenue to and from the business part of Portland, which was to make no stops from Grand Avenue to East Fiftieth Street, bearing a sign to that effect. At about 6:15 A. M. the train was going west on Hawthorne Avenue, when decedent, who apparently went north on East Thirty-Eighth Street to Hawthorne Avenue for the purpose of taking that car, tried to board it near East Thirty-Eighth Street, and was killed by falling under the wheels of the car. The train stopped at the west side of East Thirty-Ninth Street for a passenger to get off, and immediately started on. At that point it crossed by means of a switch about 40 or 50 feet in length to the north track at the rate of about 4 miles an hour. After leaving the switch the train increased its speed to about 8 miles an hour. East Thirty-Eighth Street on the north side of Hawthorne Avenue does not correspond with it on the south side, but is 100 feet farther west, and we will refer to them as Thirty-Eighth Street North and Thirty-Eighth Street South. The accident occurred near the intersection of Thirty-Eighth Street South, and the emergency signal was given about at that point, as testified by Bush, the motorman. Just after the accident the body was found lying opposite the center of Thirty-Eighth Street South, and the car began to slow up crossing Thirty-Eighth Street South, as told by Mrs. Quisenberry, plaintiff's witness. As testified by defendant's witness Keller, a mechanic and a passenger at that time, decedent grabbed for the handle on the car about 40 feet east of and opposite the east curb of Thirty-Eighth Street South. He said he watched him trying to make a grab for the handle, and that it was about a car length from where he tried to get hold of the han-

dle of the car to where his body was lying after the accident. Some of plaintiff's witnesses testified that he met the car just a little west of the end of the switch, when he grabbed for the handle of the car and was dragged some distance. Mr. Dumas, defendant's witness, who was also a passenger, said he saw decedent attempt to take hold of the car, and saw him after the car ran over him, and that his body was lying at the intersection of Thirty-Eighth Street. A verdict was rendered for the plaintiff, and the defendant appeals.    REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. F. J. Lonergan,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief with oral arguments by *Mr. Arthur I. Moulton* and *Mr. M. E. Snedecor.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It appears that decedent was guilty of the most gross negligence, amounting almost to recklessness, in trying to board the car under these circumstances. No negligence on the part of the employees of the defendant is shown, except the inference sought to be drawn by plaintiff that after the decedent was in danger the trainmen did not use diligence to avoid the accident. Plaintiff urges his right of recovery upon the doctrine of last clear chance. The court instructed the jury to the effect:

"The first question for you to consider in this case is as to whether the relation of passenger and carrier existed between the Portland Railway, Light & Power Company and Mr. Screven. And the relation of passenger and carrier commences from the time the one

in charge of the car has been notified by the passenger that he desires to board the car for the purpose of becoming a passenger, and when those in charge of the car and the passenger's minds meet so that they understand each other, the carrier that he was to stop and take on the passenger. * * ''

It was error for the court to let the jury assume that the company was bound to heed a signal from the prospective passenger when in motion away from any stopping place. Decedent must have known, or should have, that this was a "no stop" car, and had no right to expect it or any car to stop between streets. It was careless of him to attempt to board it, and nothing is shown to have occurred even tending to establish the relation of passenger and carrier. That instruction was an erroneous statement, when taken in connection with the facts. The car was nearly at full speed, where it had no duty or intention to stop; and an intending passenger cannot make a contract with a defendant or cast an obligation upon it to stop except at stopping places. The car employees are not required to stop at the signal from anyone along its track at any place. The defendant has a right to determine where and when it will stop its cars, unless controlled by ordinance or statute. Moore on Carriers, page 541, says:

"The relation between carrier and passenger can only be created by contract, express or implied. * * The general rule is that any person whom a common carrier has contracted, expressly or impliedly, to convey, * * in consideration of the payment of fare, or its equivalent, and who, in the course of the performance of such contract, has been received by the carrier under its care, either upon the means of conveyance, or at the point of departure of that conveyance, is a passenger."

And, as said in *Devroe* v. *Portland Ry., L. & P. Co.,* 64 Or. 547 (131 Pac. 304):

"If there was a usage to take passengers at the switch, the car men would have been bound to watch and be as careful, * * and the operatives [would have] good reason to expect them to do so [board the car]. * * Applying this rule, it brings us back to the main question: * * Did the car stop at the switch?"

Decedent evidently did not expect the car to stop, but sought to board it while in motion, and therefore there was no relation of passenger and carrier existing between him and the motorman. Even if it were competent to assume that there was an understanding between the decedent and the motorman that the passenger would be received, decedent had no right to attempt to enter until the car stopped; and, until it did stop, there was no such relation, and the instruction that the jury might so find was erroneous. While the relation between the carrier and passenger can be created only by contract, express or implied, one may become a passenger by boarding a street-car at a point other than a regular stopping place when it comes to a full stop: *Devroe* v. *Portland Ry., L. & P. Co.,* 64 Or. 547 (131 Pac. 304).

2. That leaves but one question for consideration, and that is whether from the evidence plaintiff was entitled to rely upon the last clear chance doctrine. Before we can be asked to apply that doctrine, it must be taken as conceded that decedent was in peril on account of his own negligence. That doctrine is that in case the decedent has been guilty of contributory negligence, and injury results, the company is liable, if, by the exercise of reasonable care, after a discovery by the defendant of the peril in which the injured party stood, the accident could have been prevented. This is the definition given by Mr. Chief Justice LORD, in

*Ward* v. *Southern Pacific Co.,* 25 Or. 433 (36 Pac. 166, 23 L. R. A. 715), quoted from *Harlan* v. *St. Louis Ry. Co.,* 65 Mo. 22, who says the duty of the company begins when the trespasser is first discovered, and its extent is to refrain from doing him willful or wanton injury; that it is not negligence to omit to do an act, unless there was a legal duty to perform it. The evidence is all to the effect that the conductor, the moment he saw decedent's hand reach for the handle and slip off, gave the emergency signal, the only thing he could possibly have done, and that the train commenced to stop immediately. A necessary element of the application of the last clear chance doctrine in such a case is a discovery by defendant's agent, the conductor, of the peril in which decedent had placed himself. The evidence of the conductor is that a form loomed up in front of him; that the side door shut off his view for a short distance. He noticed a form come up and grab the handle, and, as quickly as he saw him grab the handle, "the first thing I did I threw up one hand like that and reached for the bellcord with the other," and gave the emergency signal; that the hand hung on to the handle just a fraction of a second: "I could see his hand gradually coming off." Witness Perry, a passenger, corroborated the conductor. He was on the rear platform of the front car, just outside the entrance door where one would pay the conductor. He says the conductor was standing right there in his place; that as soon as the man missed his hold the conductor threw his hand up and made the remark, "Oh, my God!" then his hand went up and he pulled the bellcord; that the man was hanging on to the car so short a time you could hardly call it any time at all, only a second or so. Spier, a passenger, was in the front vestibule with the motorman and heard the emergency signal. Bush, the motorman, Turnbull, a

passenger, also in the front vestibule with the motor-man, and Clark, plaintiff's witness, heard the bell, and say the motorman stopped the car as quickly as he could; all of which tends to corroborate the conductor that he gave the emergency signal as soon as he noticed the man's danger. One witness for plaintiff says the car ran 100 or 150 feet from where the decedent took hold of the car to where he fell off. The court told the jury in the instructions excepted to by the third assignment:

"It may be conceded * * that those in charge of the car could have avoided the consequences of Mr. Screven's negligence if they had stopped the car in time."

This leaves out of consideration the question of the conductor's discovery of decedent's peril and his prompt action thereafter, all of which should have been explained to the jury for their decision. The cases discussing this question say that the right to recovery depends upon whether the defendant became aware of the peril of decedent in time to have avoided it by the proper use of all means at his command: *Smith* v. *Southern Pac. Co.,* 58 Or. 22 (113 Pac. 41, Ann. Cas. 1913A, 434); *Stewart* v. *Portland Ry., L. & P. Co.,* 58 Or. 377 (114 Pac. 936); *Wallace* v. *Railway Co.,* 26 Or. 180 (37 Pac. 477, 25 L. R. A. 663); *Cerrano* v. *Portland Ry., L. & P. Co.,* 62 Or. 427 (126 Pac. 37). The doctrine which makes a personal injury the fault of him who has the last clear opportunity to prevent it has coupled with it, and in it, the element of notice: *Scholl* v. *Belcher,* 63 Or. 324 (127 Pac. 968). In order to invoke the last clear chance doctrine, the plaintiff must plead and prove that defendant, after perceiving the danger and in time to have avoided it, negligently failed to do so: *Stewart* v. *Portland Ry., L. & P. Co.,*

58 Or. 377 (114 Pac. 936); *Cederson* v. *Navigation Co.,* 38 Or. 359 (62 Pac. 637, 63 Pac. 763).

"He who admits negligence on his own part, and seeks to avoid its consequences, has the burden of proof to show, by the outweighing of the testimony, that, notwithstanding such negligence, the circumstances were such that the opposing person, after perceiving his peril, could, by ordinary care, have avoided injuring him": *Plinkiewisch* v. *Portland Ry., L. & P. Co.,* 58 Or. 503 (115 Pac. 153.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

MR. JUSTICE BEAN, MR. JUSTICE McNARY and MR. JUSTICE MOORE concur. MR. CHIEF JUSTICE McBRIDE not sitting.