## LEE v. BAKER. (No. 8282.)*

(Court of Civil Appeals of Texas. Galveston.
March 7, 1923. Rehearing Denied
April 12, 1923.)

1. **Appeal and error** ⟨key⟩989—Court may consider entire evidence in passing on directed verdict where record shows judgment entered the only proper one.

In an action for personal injuries, where it undisputably appears from the evidence as a whole that plaintiff was a trespasser and guilty of contributory negligence as a matter of law, and that no negligence on the part of the defendant was shown, or for any other reason that the judgment directed by the trial court was the only one which, under the evidence, could properly have been rendered, such judgment will be affirmed, notwithstanding the general rule that in passing on the propriety of a directed verdict the appellate court will look to the evidence in behalf of the appellant only.

2. **Carriers** ⟨key⟩233—Relation with passenger contractual.

The relationship of carrier and passenger is one of contract, express or implied, and is not created unless at least the essential elements of contract are present.

3. **Carriers** ⟨key⟩238—Plaintiff boarding moving passenger train held as a matter of law a trespasser, not a passenger, and guilty of contributory negligence.

Where the undisputed evidence showed that plaintiff, a brakeman, attempted to board a through passenger train not scheduled to stop, but at the time moving at a speed of 12 to 15 miles per hour, and that the engineer was without authority to even slow its speed on the signal of one desiring to board it, and there was no evidence to indicate any custom or practice giving the engineer apparent authority to receive passengers while the train was moving, held, as a matter of law, that the relation of carrier and passenger was not established, but that plaintiff was a trespasser, and there was no liability on the part of the carrier by reason of the engineer slowing the train for plaintiff to board it; such action being without the scope of the engineer's authority.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 2, 1923.

**4. Carriers ⬤⟿287(6)—Trespasser attempting to become passenger by boarding moving train entitled only to duty of carrier not to willfully or wantonly injure him.**

The only duty which a railroad owes to a trespasser attempting to become a passenger by boarding a rapidly moving passenger train is to not willfully or wantonly injure him.

**5. Carriers ⬤⟿328(3)—Attempting to board rapidly moving passenger train negligence per se.**

The danger of attempting to board a through passenger train at a place where it is not scheduled to stop and at a time when it is traveling at a speed of from 12 to 15 miles per hour is so obvious that it should be known to all rational men, and the act of voluntarily risking it must be deemed negligence per se.

**6. Master and servant ⬤⟿302(1)—Master liable for acts within scope of servant's authority.**

A master is liable only for the acts of his servant done within the scope of his actual or apparent authority.

**7. Carriers ⬤⟿340 — No issue of discovered peril where plaintiff attempted to board rapidly moving train.**

In an action by a brakeman who attempted to become a passenger on a fast through train by boarding it while it was moving at a speed of from 12 to 15 miles per hour, evidence *held* not sufficient to give rise to the issue of discovered peril on the theory that the engineer saw the peril of plaintiff in time to avoid his injury.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by H. C. Lee against James A. Baker, receiver of the International & Great Northern Railway Company, wherein one Ackerman was named as cross-defendant. Judgment for defendant, and plaintiff appeals. Affirmed.

Dabney, King, King & Woodul and Ned B. Morris, all of Houston, for appellant.

Murphy & Perry, of Houston, for appellee.

GRAVES, J. What we conceive to be a correct general statement of the nature and result of this suit below is thus adapted from the briefs of both parties filed here; that of the appellee being much more largely drawn upon.

The appellant here, plaintiff below, instituted suit against Baker, receiver, in the district court of Harris county, Tex., for damages for personal injuries sustained by the appellant. Before the trial of the case and by his second amended answer, Baker, receiver, made the engineer, Ackerman, the engineer in charge of the train at the time the accident occurred, a party to the suit, and asked for judgment over and against the said Ackerman in the event that judgment was had against the said Baker, receiver. The material facts of the case are these:

The accident occurred at the town of Spring, located about 25 miles north of Houston. In July, 1920, the appellant went from Palestine to Spring to become one of the brakemen on a local freight train running between Galveston and Spring. He got to Spring on the morning of July 27th, and upon his arrival he found that the crew he was to work with was in Galveston, and that he could not go to work until the crew returned to Spring, which would be some time during the morning of July 28, 1920. He then decided that he would go to Houston. The Sunshine Special, a through passenger train between St. Louis and Galveston, was due to pass through Spring about 6 o'clock in the afternoon, south bound. This train was not scheduled to stop at Spring, either as a regular station stop or upon flag. There was a local train which came through Spring about an hour later and which did stop at Spring, and thus took care of people desiring to go from Spring to Houston. This was known to the appellant. The appellant knew, or was advised by parties at Spring, that the Sunshine Special had frequently stopped at Spring to take water, and that, when it did so, passengers would often get on and off. Shortly before the Sunshine Special was due, the appellant went over to the station and stationed himself with one or two other parties near the water tank. These parties were there for the purpose of boarding this train in case it stopped at Spring for water or for any other purpose. While the train was still some distance from the water tank, the appellant gave the engineer a stop signal and attempted to flag the train. The appellant then gave the engineer a slow-down signal, and, according to his testimony, the engineer, who knew him personally as an employee of the road, returned a like signal to him and reduced the speed of the train. The engineer, on the contrary, denies knowing him and states that he gave Lee the sign indicating "nothing doing," and denies that he reduced the speed of the train. The undisputed evidence is that the engineer had no authority to heed the flag given by Lee, or to stop the train and receive him as a passenger at Spring. When the train passed Lee it was moving at a rate of speed from 12 to 15 miles per hour. Lee at that time knew that the train was not going to stop, although he testified it had slowed down in response to his signal, and he began to look for an open vestibule so that he could board the train at the speed at which it was then running—12 to 15 miles per hour—which he swore he could have done with safety. The appellant further testified that the rear vestibule on the chair car was open and he attempted to get on the train at that place. According to his testimony he swung for this opening and caught both handrails and had

one or both feet on the steps. He testifies that there was some sudden or quick movement of the train forward, the throttle was jerked open, and the force of the jerk caused the door of the vestibule to slam to and hit him square in the face, and he was thrown off, that the forward movement of the train and the swinging to of this door occurred almost instantaneously, and that the two forces together caused him to lose his handhold and fall. The engineer saw Lee in the act of falling, immediately put the air on in emergency, and stopped with the rear of the train a short distance from where Lee fell. In falling from the train, Lee rolled under the train and lost one leg and the foot of the other leg.

When the plaintiff rested, the defendant, Baker, and the cross-defendant, Ackerman, moved the court to instruct the jury to return a verdict for them, which action the court refused. Thereafter the defendant had rested, and the plaintiff also announced that there was no more evidence, the defendant and cross-defendant again moved the court to instruct the jury to return a verdict for them, which motion the court granted, and on return of the verdict so directed entered judgment thereon in favor of the defendant, Baker,. receiver, and the cross-defendant, Ackerman.

In this court appellant earnestly and ably contends that under the case as made by him below the relation of carrier and passenger was created between himself and the receiver; that issues for the jury were raised as to whether the receiver was actionably negligent toward and liable in consequent damages to him, both originally and as a result of discovering his position of peril, and as to whether he himself was guilty of contributory negligence.

In support of these contentions it is first argued that, in deciding whether the trial court erred in instructing a verdict against a plaintiff after hearing the case and determining as a matter of law that he could not recover, the appellate court will look to the evidence presented in the plaintiff's behalf alone, unqualified by that for the opposing litigant, and, if it is sufficient to raise issues of fact, will reverse the judgment, citing these authorities: Irwin v. Railway (Tex. Civ. App.) 42 S. W. 664; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Marchand v. Railway, 20 Tex. Civ. App. 1, 48 S. W. 781; Bonn v. Railway (Tex. Civ. App.) 82 S. W. 809.

[1] That in circumstances of ordinary conflict the general rule is as thus stated the cases referred to make clear, but it is equally well settled that, where evidence for both parties has been heard below, and from it as a whole on appeal it indisputably appears that the plaintiff was a trespasser and guilty of contributory negligence as a matter of law, that no negligence was shown against

the defendant, or for any other reason that the judgment of the trial court was the only one that could properly have been rendered, the appellate court will affirm the action of the trial court. Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Railway Co. v. Lee, 70 Tex. 501, 7 S. W. 857.

The sole question for our decision then is: Was the evidence upon the whole case here such that the court below could not properly have rendered any other judgment than one in favor of the receiver?

[2, 3] After careful consideration of the cause, we think it was, mainly under these conclusions:

(1) The relation of carrier and passenger was not established.

(2) Lee was shown to be a trespasser, attempting without right to board a rapidly moving train.

(3) He was guilty of contributory negligence, as a matter of law, in undertaking in the circumstances he did to get on a train moving at the speed of from 12 to 15 miles per hour.

(4) Any claim for liability that may have grown out of the alleged course of the engineer in slowing down for him to get on lay against that employee as an individual only, since the undisputed proof shows that such action was wholly beyond the scope of his authority.

Appellant by his own testimony puts clearly out of the case any possible right in himself growing out of the failure of the train to stop, because he acted with full realization of that fact, and thus narrowed his claim to one resting wholly upon his being prevented from boarding it while moving at the rate he knew it was going—that is, from 12 to 15 miles per hour. He testified:

"The reason I flagged it was for the simple reason that I saw he was not going to stop, so that, before I concluded he was not going to stop—it appeared he was not going to stop—I believed when I flagged him that I had to flag him to stop or slow down."

"When I did get on or attempted to get on, I knew that he had not stopped. When I made my attempt to get on, I knew that he was running, as I have stated, 12 or 15 miles an hour. I did attempt to board a moving train moving at the rate of speed I have indicated. I did know that he had not stopped to take on any passengers. I knew that he had slowed down to take me on. I was a passenger. I did know that the train had not stopped. I did know that he had not stopped to take on passengers. I had determined in my own mind that he was not going to stop and take water there. I had determined in my mind also that he was not going to stop at the passenger depot. Then I decided that I would get on the train while it was in motion after he slowed down. That is my idea of it."

His assertion herein that he was a passenger under such conditions necessarily then was predicated solely upon the alleged under-

standing between himself and the engineer that he was to be so received by the slowing down of the train for that purpose to 12 or 15 miles per hour. He further testifies in this connection that he was prepared to and intended to pay his fare after getting on the train, and that it was customary for fares to be so accepted.

As already indicated, we do not think this situation gave rise to the relation of carrier and passenger between appellant and the railway company's receiver, but left him in the attitude of a trespasser. That relation is one of contract, express or implied, and is not created until at least the essential elements of one are present. Here appellant wholly failed to establish any sort of obligation of the receiver to him. The undisputed evidence showed that this train was a through one not scheduled to stop at that place, that the engineer was entirely without authority to even slow it down on the signal of one desiring to board it, and further failed to indicate any such custom or practice as might have conferred upon the engineer apparent authority to receive passengers while the train was so moving. Indeed, no pretense of showing that passengers were ever received while the train was moving at all was made.

[4, 5] There was therefore no acceptance of appellant as a passenger, and his mere reliance on the unauthorized acquiescence of the engineer in his desire to get on the train, not being binding upon the receiver, neither gave him a right to do so, nor to hold the receiver responsible for the failure of his effort. In such circumstances the latter owed him no duty except not to willfully or wantonly injure him. Horwitz v. Jefferson County Traction Co. (Tex. Civ. App.) 188 S. W. 26; Richardson v. Portland Ry., Light & Power Co., 70 Or. 330, 141 Pac. 749; Quinn v. Philadelphia Rapid Transit Co., 224 Pa. 162, 73 Atl. 319; Kentucky Highlands Ry. Co. v. Creal, 166 Ky. 469, 179 S. W. 417, L. R. A. 1916B, 830, Ann. Cas. 1917C, 1205.

While the writer does not feel it necessary to go that far, the majority of this court, as the above-stated third conclusion evidences, further hold that it was negligence as a matter of law for appellant to knowingly attempt to board such a train running at as high a speed as 12 or 15 miles an hour; and this notwithstanding that it has been held in a number of Texas cases, under states of fact showing some right in the would-be passenger as well as a much slower speed than that here involved, that it is ordinarily a question of fact as to whether the effort to board a moving train is negligence or not. See Railway Company v. Murphy, 46 Tex. 358, 26

Am. Rep. 272; Railway Co. v. Dorough, 72 Tex. 111, 10 S. W. 711; Railway Co. v. Mills, 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497. In this instance, however, it is thought the danger was so apparent and obvious that it can be said that no person of ordinary care and prudence would have incurred it, that it may be laid down as a proposition of law that the hazard of thus undertaking to get on a through passenger train running at the rate of speed of from 12 to 15 miles per hour would be known to all rational men, and that accordingly the act of voluntarily risking it must be deemed negligence per se. Railway Company v. Ellison, 39 Tex. Civ. App. 172, 87 S. W. 213; Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106.

[6] It further follows from these conclusions that, if appellant was in fact misled to his injury by a wholly unauthorized act of the engineer in assuming to agree with him to slow down, for him to get on the train, any right of action he might have in consequence would be against that employee individually, and not against his principal, the receiver. No principle in our law is better settled than that a master is only liable for the acts of his servant done within the scope of his actual or apparent authority. Here there was neither contingency, as the statement of the facts has shown. G., H. & S. A. Railway Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367.

[7] The undisputed evidence also negatives appellant's contention that enough was shown to give rise to the issue of discovered peril. While the witness Henry first testified that the engineer was looking at Lee at the time the latter made the attempt to board the train, he took it back upon cross-examination and said he could not see from the distance he was standing whether that was so or not. No other witness essayed quite so much, and the engineer positively swore he did not at that time see appellant, nor until he was actually falling; that he instantly applied the air in emergency, and stopped the train as quickly as possible. As, by appellant's own repeated statement, the accident was practically instantaneous with his getting on the steps and grabbing the handrails, obviously there was no time within which the injury might have been avoided. It is equally clear that he could have been in no peril so long as he was standing on the ground beside the track, nor until he so undertook to swing onto the car.

We think the trial court did not err in giving the peremptory instruction, and that action has been affirmed.

Affirmed.